(No. 106741.—

# THE ROSELLE POLICE PENSION BOARD, Appellant, v. THE VILLAGE OF ROSELLE, Appellee.

*Opinion filed March 19, 2009.*

Richard J. Reimer, Keith A. Karlson and Jeffrey A. Goodloe, of Hinsdale, for appellant.

Karl R. Ottosen and Ericka J. Thomas, of Ottosen Britz Kelly Cooper & Gilbert, Ltd., of Naperville, for appellee.

Laura J. Puchalski and Richard J. Puchalski, of Chicago, for *amicus curiae* Illinois Public Pension Fund Association.

Joseph R. Mazzone, of Joliet, for *amicus curiae* Metropolitan Alliance of Police.

Roger Huebner and Brian Day, of Springfield, for *amicus curiae* Illinois Municipal League.

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

## OPINION

The issue in this case is whether the surviving spouse of a Village of Roselle (Village) police officer is entitled to receive annual increases on the pension awarded to her

following the death of her husband, who had been granted a "line of duty" disability pension and was, at the time of his death, receiving annual benefit increases based on having attained the age of 60. The Roselle Police Pension Board (the Board) held that the surviving spouse was entitled to the annual increases. The Village disagreed and petitioned for administrative review of the Board's decision in the circuit court of Du Page County. The circuit court reversed, and its judgment was affirmed by the appellate court. 382 Ill. App. 3d 1077. We granted the Board's petition for leave to appeal (210 Ill. 2d R. 315). For the reasons that follow, the judgment of the appellate court is affirmed.

## Background

Charles William Gurke, Jr., was employed by the Village as a police officer. In that capacity, he was a member of and participant in the Roselle Police Pension Fund, administered by the Board. Effective January 8, 1987, the Board awarded Officer Gurke a "line of duty" disability pension pursuant to section 3—114.1(a) of the Illinois Pension Code (40 ILCS 5/3—114.1(a) (West 2004)).

Section 3—114.1(d) of the Pension Code (40 ILCS 5/3—114.1(d) (West 2004)) authorizes annual increases for officers receiving "line of duty" disability pensions pursuant to section 3—114.1. Under section 3—114.1(d),

"[a] disabled police officer who (1) is receiving a pension under this Section on the effective date of this amendatory Act of the 91st General Assembly, (2) files with the Fund, within 30 days after that effective date and annually thereafter while the pension remains payable, a written application for the benefits of this subsection, including an affidavit stating that the applicant has not earned any income from gainful employment during the most recently concluded tax year and a copy of his or her most recent Illinois income tax return, (3) has service credit in the Fund for at least 7 years of active duty, and (4) has been receiving the pension under this Section for a period which, when

added to the officer's total service credit in the Fund, equals at least 20 years, shall be eligible to receive an annual noncompounded increase in his or her pension under this Section, equal to 3% of the original pension." 40 ILCS 5/3—114.1(d) (West 2004).

Officer Gurke never applied for the 3% annual increase authorized by this provision. Upon attaining the age of 60, however, he began receiving annual increases to his pension under a different portion of the Pension Code, section 3—111.1(c). It provides:

"The monthly pension of a police officer who retires on disability or is retired for disability shall be increased in January of the year following the year of attaining age 60, by 3% of the original grant of pension for each year he or she received pension payments. In each January thereafter, the police officer shall receive an additional increase of 3% of the original pension." 40 ILCS 5/3—111.1(c) (West 2004).

Officer Gurke received annual increases under this provision until he died in 2005. At the time of his death, Office Gurke was married to Bonnie Gurke. His pension continued to be payable to her pursuant to section 3—114.1(b) of the Pension Code (40 ILCS 5/3—114.1(b) (West 2004)).

Mrs. Gurke's entitlement to continuation of her husband's "line of duty" disability pension was not and has never been questioned. Nor is there any dispute that the amount of the pension Mrs. Gurke was entitled to receive was the same as the benefit her husband had been receiving at the time he died, including past benefit increases. The Board was uncertain, however, as to whether the benefits she received should continue to be eligible for the annual increases authorized by section 3—111.1(c) of the Pension Code (40 ILCS 5/3—111.1(c) (West 2004)) in the future. It therefore scheduled an administrative hearing on the matter.

The Village was granted leave to intervene in the proceedings and appeared at the hearing through

counsel. Mrs. Gurke elected not to attend. Following the hearing, the Board issued a written decision in which it concluded that under sections 3—111.1 and 3—112 of the Pension Code (40 ILCS 5/3—111.1, 3—112 (West 2004)), Mrs. Gurke was entitled to the annual increases. Two of the Board's members disagreed and voted against awarding the increases.

The Village subsequently filed a timely complaint in the circuit court of Du Page County seeking administrative review of the Board's decision. The circuit court granted the Illinois Public Pension Fund Association (IPPFA) leave to file a friend of the court brief in support of the Board. Following briefing from the parties and a hearing, the circuit court entered an order reversing the Board's decision to award annual benefit increases to Mrs. Gurke, holding that "there is no statutory authorization for cost of living increases for surviving spouses under *** the *** Pension Code." As indicated at the outset of this opinion, the appellate court affirmed. 382 Ill. App. 3d 1077. In so doing, it distinguished its prior decision in *Sola v. Roselle Police Pension Board*, 342 Ill. App. 3d 227 (2003), which upheld annual increases to a surviving spouse under comparable circumstances, but did so on procedural grounds unrelated to the merits of the case. We granted the Pension Board's petition for leave to appeal and allowed the Illinois Public Pension Fund Association and the Metropolitan Alliance of Police to file friend of the court briefs in support of the Board, and the Illinois Municipal League to file a friend of the court brief in support of the Village.[1]

## Analysis

As in any proceeding for administrative review, our role in this case is to review the decision of the adminis-

---

[1]Mrs. Gurke herself did not challenge the judgments of the circuit or appellate courts and is not a party to the present appeal.

trative agency, rather than that of the circuit court (*Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007)) or the appellate court (*Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 539 (2006)). Pursuant to section 3—148 of the Pension Code (40 ILCS 5/3—148 (West 2004)), judicial review of the decision of the Board in this case is governed by article III of the Code of Civil Procedure (735 ILCS 5/3—101 *et seq.* (West 2004)). In proceedings under that statute, the applicable standard of review turns on whether the question presented is one of fact, of law, or a mixture of fact and law. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d at 532.

The salient facts of this case are not in dispute. The litigation turns solely on an issue of statutory construction. Statutory construction is a question of law which we consider *de novo*. *Board of Education, Joliet Township High School District No. 204 v. Board of Education, Lincoln Way Community High School District No. 210*, 231 Ill. 2d 184, 194 (2008).

When construing a statute, a court's primary goal is to ascertain the intent of the legislature. The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. The statute should be evaluated as a whole, with each provision construed in connection with every other section. If legislative intent can be discerned from the statutory language, this intent must prevail, and no resort to other tools of statutory construction is necessary. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 216-17 (2008).

The principle that the language of pension statutes is to be liberally construed in favor of the rights of the pensioner is no exception to the foregoing rules. If legislative intent is obvious from the language used in a pension act, that intention must be made effective. The

liberal construction canon does not authorize the judiciary to give the act a meaning not expressed in it. *Mattis v. State Universities Retirement System*, 212 Ill. 2d 58, 76 (2004).

The Village of Roselle is a municipality with fewer than 500,000 residents. The police pension system created by article 3 of the Pension Code (40 ILCS 5/3—101 *et seq.* (West 2004)) for municipalities with populations of that size provides for two basic types of pensions, "retirement pensions" which are paid when officers conclude their employment after meeting certain requirements for age and years of service and "disability pensions" which are paid when officers become unable to continue working as police officers due to a physical or mental disability. Disability pensions are further divided into "line of duty," "not on duty," and "occupational disease" disability pensions.

The basic rules governing retirement pensions are set forth in section 3—111 of the Pension Code (40 ILCS 5/3—111 (West 2004)). "Line of duty" disability pensions are treated under section 3—114.1 of the Code (40 ILCS 5/3—114.1 (West 2004)), "not on duty" disability pensions are the subject of section 3—114.2 of the Code (40 ILCS 5/3—114.2 (West 2004)), and "occupational disease" disability pensions are the subject of section 3—114.6 of the Code (40 ILCS 5/3—114.6 (West 2004)).

Where a police officer is receiving a retirement pension under section 3—111 (40 ILCS 5/3—111 (West 2004)) at the time of his or her death, pension benefits continue to be payable to his or her survivors. The terms of such survivor pensions are governed by section 3—112 of the Code (40 ILCS 5/3—112 (West 2004)). When, as happened in this case, the police officer is still disabled and is receiving a "line of duty" disability pension when he or she dies, the officer's survivors are likewise entitled to benefits. Those benefits, however, are authorized by a

different statute, subsection (b) of the provision dealing with "line of duty" disability pensions (40 ILCS 5/3—114.1(b) (West 2004)). Subsection (b) states that "[i]f a police officer on disability pension dies while still disabled, the disability pension shall continue to be paid to his or her survivors ***." 40 ILCS 5/3—114.1(b) (West 2004). It further provides that the sequence for determining which survivors are entitled to the benefits and when is governed by the same rules governing normal retirement pensions set forth in section 3—112 of the Pension Code (40 ILCS 5/3—112 (West 2004)).

There is no question that under the sequence specified in section 3—112, Mrs. Gurke was the survivor entitled to continued receipt of Officer Gurke's "line of duty" disability pension benefits under section 3—114.1(b). The point of contention is whether those "line of duty" disability pension benefits continued to be subject to the annual 3% increases to which her husband was entitled at the time of his death.

During his lifetime, Officer Gurke was entitled to receive the annual increases by virtue of section 3—111.1(c) of the Pension Code, which states:

"The monthly pension of a police officer who retires on disability or is retired for disability shall be increased in January of the year following the year of attaining age 60, by 3% of the original grant of pension for each year he or she received pension payments. In each January thereafter, the police officer shall receive an additional increase of 3% of the original pension." 40 ILCS 5/3—111.1(c) (West 2004).

By its terms, this provision addresses only the increased amounts "the police office shall receive" after attaining the age of 60. 40 ILCS 5/3—111.1(c) (West 2004). It is silent on the question of whether the annual increases continue to accrue once the officer dies and the "line of duty" pension benefits become payable to his or her survivors. It therefore does not resolve the question at issue in this case.

In support of its claim that "line of duty" disability benefits remain subject to the annual increases following an officer's death, the Board relies on the language of section 3—112(a) of the Pension Code, which provides that "[u]pon the death of a police officer entitled to a pension under Section 3—111, the surviving spouse shall be entitled to the pension to which the police officer was then entitled." 40 ILCS 5/3—112(a) (West 2004). The Board's contention is that this provision is ambiguous and should be construed to entitle survivors to step into the shoes of the decedent officer and to remain eligible for future annual benefit increases just as the officer would have been eligible had he not passed away. In the alternative, it asserts that even if the statutory language is not ambiguous, the plain and popularly understood meaning of the language used in section 3—112(a) supports the conclusion that annual increases should continue to be payable to an officer's survivors following his death.

The appellate court considered and rejected the Board's analysis of the language used in section 3—112(a). See 387 Ill. App. 3d at 1081-83. In our view, however, reference to section 3—112(a) is neither necessary nor appropriate for resolution of this case. By its terms, section 3—112(a) applies to situations where "a police officer entitled to a pension under Section 3—111" has died. 40 ILCS 5/3—112(a) (West 2004). This, of course, is not such a case. At the time of his death, Officer Gurke was not receiving a retirement pension under section 3—111 (40 ILCS 5/3—111 (West 2004)); he was receiving a "line of duty" disability pension under section 3—114.1 (40 ILCS 5/3—114.1 (West 2004)). It is true that section 3—114.1 does cross-reference section 3—112. See 40 ILCS 5/3—114.1(b) (West 2004). By its terms, however, it refers to section 3—112 only for purposes of determining the "sequence" in which

survivors are entitled to receive benefits. As we have already noted, the proper sequence for payments to survivors is not disputed here.

A careful reading of article 3 of the Pension Code (40 ILCS 5/3—101 *et seq.* (West 2004)) discloses no provision expressly authorizing the continuation of annual increases to survivors where, as here, the police officer had been receiving a "line of duty" disability pension at the time of his death and had, himself, qualified for annual increases based on attaining the age of 60. In this respect, article 3 stands in contrast to numerous other Pension Code sections. Provisions of the Pension Code governing the General Assembly Retirement System (see 40 ILCS 5/2—121.1(d) (West 2004)), the County Employees' and Officers' Annuity and Benefit Fund (see 40 ILCS 5/9—146.2 (West 2004)), the Park Employees' and Retirement Board Employees' Annuity and Benefit Fund—Cities Over 500,000 (see 40 ILCS 5/12—135.3 (West 2004)), Sanitary District Employees' and Trustees' Annuity and Benefit Fund (see 40 ILCS 5/13—306(d) (West 2004)), the State Employees' Retirement System of Illinois (see 40 ILCS 5/14—119(g), 14—121(m) (West 2004)), the State Universities Retirement System (see 40 ILCS 5/15—145(j) (West 2004)), the Teachers' Retirement System of the State of Illinois (see 40 ILCS 5/16—143.1(a) (West 2004)), the Public School Teachers' Pension and Retirement Fund—Cities Over 500,000 Inhabitants (see 40 ILCS 5/17—122 (West 2004)), and the Judges Retirement System of Illinois (see 40 ILCS 5/18—128.01(f) (West 2004)) all include express and specific language authorizing annual increases in retirement benefits paid to spouses or other survivors. These provisions clearly demonstrate that the legislature knew exactly how to authorize such annual increases when it intended to do so. Because the legislature failed to provide for annual increases with equal clarity with respect to pension

benefits awarded to survivors of police officers who had been granted "line of duty" disability pensions, we must conclude that no such annual increases were authorized. See *Certain Taxpayers v. Sheahen*, 45 Ill. 2d 75, 82 (1970).

The Board and the friends of the court who have submitted briefs in support of the Board's position argue that strong public policy considerations militate in favor of allowing a survivor of a police officer who had been granted a "line of duty" disability pension to receive annual increases on the benefits he or she receives following the officer's death. We are not unsympathetic to the equitable considerations raised by the Board and its supporters. We note, however, that while survivors of police officers receiving "line of duty" disability pensions are not eligible for annual benefit increases, the legislature permits them to continue to receive the same benefit amount which the police officers themselves were being paid at the time of death. By contrast, the various pension plans which grant annual increases to survivors typically provide that the survivors are eligible to receive only a portion of the benefit the pensioner was receiving at the time he or she died. See, *e.g.*, 40 ILCS 5/2— 121.1(a) (West 2004); 40 ILCS 5/9—146.1(a) (West 2004); 40 ILCS 5/13—306 (West 2004); 40 ILCS 5/14—119 (West 2004); 40 ILCS 5/18—128.01 (West 2004).

The Board and its supporters may believe that even with the higher initial benefit amount, pensions paid to survivors of police officers receiving "line of duty" disability pensions should still be subject to annual increases. To this we can only respond that the policy arguments they advance are properly addressed to the legislature rather than this court. " '[W]e do not sit as a superlegislature to weigh the wisdom of legislation nor to decide whether the policy which it expresses offends the public welfare.' " *Hayen v. County of Ogle*, 101 Ill. 2d 413, 421 (1984), quoting *Day-Brite Lighting, Inc. v. Mis-*

*souri*, 342 U.S. 421, 423, 96 L. Ed. 469, 472, 72 S. Ct. 405, 407 (1952). We must interpret and apply statutes in the manner in which they are written and cannot rewrite them to make them consistent with the court's idea of orderliness and public policy. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394-95 (1998).

Article 3 of the Pension Code does address the question of whether annual benefit increases should be paid to the survivors of police officers who were receiving "line of duty" disability pensions and who passed away after applying for and receiving annual benefit increases under subsection (d) of section 3—114.1 (40 ILCS 5/3—114.1(d) (West 2004)), which applies to officers who had yet to reach the age of 60 but who were unable to earn income from other gainful employment. The final paragraph of subsection (d) provides:

> "Upon the death of the disabled police officer, the annuity payable under this Section to his or her survivors shall include any annual increases previously received, *but no additional increases shall accrue under this subsection.*" (Emphasis added.) 40 ILCS 5/3—114.1(d) (West 2004).

While this restriction applies, by its terms, only to situations where the deceased officer had received increases under subsection (d) and does not reference cases where the officer had qualified for annual increases under section 3—111.1(c) (40 ILCS 5/3—111.1(c) (West 2004)), it would be anomalous to treat the latter situation differently. Reason and experience suggest that survivors of officers who were under the age of 60 (and thus more likely to have dependents) and who earned no income from gainful employment would be among the most in need of financial support. If they are not entitled to annual benefit increases, it would make no sense to give more favorable treatment and allow benefit increases to survivors of officers 60 years of age or older whose right to earn additional income was unrestricted. Under the principle that courts are obliged to construe statutes

to avoid absurd, unreasonable, or unjust results (see *In re Mary Ann P.*, 202 Ill. 2d 393, 406 (2002)), we must therefore reject the interpretation of the law advanced by the Board.

The conclusion that article 3 of the Pension Code does not authorize annual benefit increases to survivors of police officers who had been granted "line of duty" disability pensions and who were, at the time of their deaths, receiving annual benefit increases based on having attained the age of 60 is further supported by the Public Pension Division of the Department of Financial and Professional Regulation. In an "Advisory Services Update" issued by the Division in March of 2005, under the name of the Division's chief administrator, it interpreted article 3 of the Pension Code to mean that "upon the death of a police officer with a surviving spouse, the pension the police officer is either receiving or entitled to receive is *fixed at the date of death with no further increases being payable.*" (Emphasis added.)

While we are not bound by an administrative body's interpretation of the law, we believe the Division's interpretation is entitled to considerable deference. Through section 1A—106 of the Pension Code (40 ILCS 5/1A—106 (West 2004)), the General Assembly invested the Division with the responsibility for providing advisory services to funds covered by the Pension Code, including the fund involved in this case, "on all matters pertaining to their operation." Where, as here, the legislature expressly or implicitly delegates to an agency the authority to clarify and define a specific statutory provision, administrative interpretations of such statutory provisions should be given substantial weight unless they are arbitrary, capricious, or manifestly contrary to the statute. *Church v. State of Illinois*, 164 Ill. 2d 153, 161-62 (1995). The Division's interpretation of the law is none of those things.

Conclusion

For the foregoing reasons, we agree with the circuit and appellate courts that the Board had no authority under article 3 of the Pension Code to grant annual benefit increases to Mrs. Gurke following the death of her husband. We therefore affirm the judgment of the appellate court which upheld the circuit court's judgment reversing the Board's decision.

*Affirmed.*