# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Scholl's 4 Season Motor Sports, Inc. v. Illinois Motor Vehicle Review Board,*
**2011 IL App (1st) 102995**

---

| | |
|---|---|
| Appellate Court Caption | SCHOLL'S 4 SEASON MOTOR SPORTS, INC., an Illinois Corporation, Plaintiff-Appellant, v. ILLINOIS MOTOR VEHICLE REVIEW BOARD; TERRENCE M. O'BRIEN, Chairperson of Motor Vehicle Review Board; ARCTIC CAT SALES, INC., a Minnesota Corporation, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-2995 |
| Filed | September 8, 2011 |
| Rehearing denied | October 11, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from defendant manufacturer's notice of termination of plaintiff's franchise to sell defendant's ATVs and snowmobiles, the notice of protest filed by plaintiff with the Illinois Motor Vehicle Board alleging that the termination would violate the Illinois Motor Vehicle Franchise Act was properly dismissed by the Board on the ground that the ATVs and snowmobiles did not fit within the definition of "motorcycles" in the Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-11682; the Hon. Sophia H. Hall, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Law Office of Marc N. Blumenthal, of Chicago (Marc N. Blumenthal, of counsel), for appellant. |
| --- | --- |
| | Lisa Madigan, Attorney General (Michael A. Scodro, Solicitor General, and Eric Truett, Assistant Attorney General, of counsel), and Barnes & Thornburg LLP (Annamarie A. Daley, James E. Michel, and Gregory S. Gistenson, of counsel) both of Chicago, for appellees. |
| Panel | JUSTICE STERBA delivered the judgment of the court, with opinion. Presiding Justice Lavin and Justice Salone concurred in the judgment and opinion. |

**OPINION**

¶ 1    The instant appeal arises from the termination of two franchise dealership agreements between Arctic Cat Sales, Inc. (Arctic Cat), a manufacturer of all-terrain vehicles (ATVs) and snowmobiles, and Scholl's 4 Season Motor Sports, Inc. (Scholl's), a franchise dealer which exclusively sold Arctic Cat-brand ATVs, snowmobiles, parts, clothing and accessories. After receiving a notice of termination letter from Arctic Cat, Scholl's timely filed a notice of protest with the Illinois Motor Vehicle Board (Board), alleging termination would violate sections 4(d)(6) and 10.1 of the Illinois Motor Vehicle Franchise Act (815 ILCS 710/4(d)(6) (West 2008)). In response, Arctic Cat moved to dismiss Scholl's notice of protest. A Board hearing officer issued a proposed decision granting Arctic Cat's motion. The Board confirmed the hearing officer's decision. Scholl's then filed a complaint for administrative review with the circuit court of Cook County, which affirmed the Board's final order. For the following reasons, we affirm.

¶ 2                                I. BACKGROUND

¶ 3    Scholl's, an Illinois corporation, and Arctic Cat, a Minnesota corporation, began their business relationship in 1982. Scholl's sold Arctic Cat ATVs and snowmobiles pursuant to two separate dealer agreements for the two vehicle types. Scholl's and Arctic Cat executed the most recent ATV dealer agreement on August 1, 2006. The termination provision stated that the agreement "may be terminated at any time" by Arctic Cat, "upon 10 days written notice to Dealer in the event any sums owed [Arctic Cat] are not paid by Dealer when due, provided that all such sums are not paid to [Arctic Cat] within this 10 day period." Arctic Cat and Scholl's executed a similar agreement for snowmobiles on July 7, 2007, which included an identical termination provision.

¶ 4        An ongoing dispute between Scholl's and Arctic Cat arose regarding Arctic Cat's discount program. Scholl's maintained that the discount program was impracticable. On the one hand, Scholl's needed to participate in the discount program to offer competitive prices, but on the other hand, the terms of the program resulted in onerous interest charges that precluded Scholl's from profitably selling Arctic Cat's products.

¶ 5        On July 18, 2008, counsel for Scholl's sent a correspondence to Christopher Twomey, chairman and chief executive officer of Arctic Cat, stating that Scholl's "is laden with more than twice as much inventory as it can handle; and the floor plan interest is literally driving this dealer out of business." In addition, the correspondence stated, "[i]f this results in closing the doors, I have been authorized to take all necessary legal action to recover the tremendous losses my client has and will suffer based on your company's representatives' misrepresentations both verbal and in writing; discrimination amongst dealers, violations of the [Motor Vehicle Franchise Act] and the possible misrepresentation of sales to coax dealers into purchasing more product, all of which inures Arctic Cat and the finance company, and leaves the dealer in the hole." The correspondence also stated that "it would be mutually beneficial to find a solution, rather than engage in protracted litigation."

¶ 6        By its counsel, Arctic Cat sent a response correspondence on August 14, 2008, stating that it "disagrees with most of the statements made in that letter" and that "Arctic Cat did pick up 28 snowmobiles in November or December 2007." The correspondence stated that, since then, Arctic Cat "has continued to encourage [Scholl's] to increase its efforts to retail product." The correspondence further stated that, "[i]n response, [Scholl's] has requested that Arctic Cat either discount the product or pick up more product, which Arctic Cat has repeatedly not agreed to do." The correspondence stated that, "[e]ach dealer makes its own determinations of the number of Arctic Cat units it orders" and that "[e]ach dealer is responsible for the retail of its product." In addition, the correspondence stated that, "Arctic Cat remains willing to work with Scholl's on programs to assist with the retail of the product."

¶ 7        On August 18, 2009, Ann Joppru, credit manager for Arctic Cat, sent a notice of termination letter to Scholl's, which stated as follows:

   "A review of your file indicates that you are indebted to Arctic Cat Sales, Inc. in the sum of $75,073.03. Arctic Cat Sales, Inc. has attempted to collect a sum from you for quite some time.

   Pursuant to your Arctic Cat Sales, Inc. Dealer Agreement, we hereby notifying [*sic*] you that you have ten (10) days in which to pay all sums due Arctic Cat in full. If you fail to make the payment due within ten (10) days, Arctic Cat Sales, Inc. Dealer Agreement will terminate as of that time."

¶ 8        In response, Scholl's filed a notice of protest with the Board on August 27, 2009, within 10 days of receiving Arctic Cat's notice of intent to terminate. The form provided by the Illinois Secretary of State's office for the notice of protest provides that the only violations to be heard by the Board are those specified and marked by the party filing the notice of protest. Scholl's specified that Arctic Cat committed alleged violations of section 4(d)(6) of the Motor Vehicle Franchise Act (815 ILCS 710/4(d)(6) (West 2008)), as permitted by

section 10.1(d) of the Motor Vehicle Franchise Act (815 ILCS 710/10.1(d) (West 2008)). Section 4(d)(6) of the Motor Vehicle Franchise Act requires 60 days' notice prior to termination of a dealer agreement. Section 10.1(d) of the Motor Vehicle Franchise Act states that "[t]he filing of a timely protest by a motorcycle franchise before the [Board] as prescribed by Sections 12 and 29 of this Act, shall stay the effective date of a *** termination." 815 ILCS 710/10.1(d) (West 2008). The record is devoid of evidence that the Board issued a stay of the effective termination date pursuant to section 10.1(d) of the Motor Vehicle Franchise Act and the Board concedes in its response brief that it did not issue an order staying the effective termination date of the franchise agreement. According to Scholl's, within days of filing its notice of protest, its dealer agreements with Arctic Cat were terminated.

¶ 9 Scholl's requested a hearing under sections 12 (815 ILCS 710/12 (West 2008)) and 29 (815 ILCS 710/29 (West 2008)) of the Motor Vehicle Franchise Act. In a correspondence addressed to Secretary of State Jesse White, Scholl's alleged that Arctic Cat's termination was premature and in bad faith.

¶ 10 On September 2, 2009, the Board notified Arctic Cat that Scholl's had filed a notice of protest. The correspondence stated that the documentation relevant to the notice of protest was forwarded to the chairman of the Board for his disposition and that, if the chairman agreed the matter should be scheduled for hearing, Arctic Cat would be notified of said hearing.

¶ 11 Arctic Cat moved to dismiss Scholl's notice of protest on October 13, 2009. In its motion, Arctic Cat noted that, in the notice of protest, Scholl's marked the box on the form that alleged a violation of section 10.1 of the Motor Vehicle Franchise Act. Arctic Cat argued that section 10.1 extends the protections of the Motor Vehicle Franchise Act to motorcycle dealerships and, therefore, Scholl's was seeking relief under the Motor Vehicle Franchise Act as a motorcycle dealer. Arctic Cat's motion provided the definition of "motorcycles" under the Motor Vehicle Franchise Act:

> "As used in this Section, 'motorcycle' means every motor vehicle having a seat or saddle for the use of the rider and designed to travel with 3 or less wheels in contact with the ground, excluding farm, garden, and lawn equipment, and including off-highway vehicles." 815 ILCS 710/10.1(a) (West 2008).

¶ 12 Also pertinent to its motion, Arctic Cat noted the definition of "motor vehicle" pursuant to section 2(a) of the Motor Vehicle Franchise Act:

> " 'Motor vehicle', any motor driven vehicle required to be registered under 'The Illinois Vehicle Code.' " 815 ILCS 710/2(a) (West 2008).

¶ 13 Arctic Cat asserted that Scholl's is not a motorcycle dealership because: (1) Scholl's never sold motorcycles; and (2) Arctic Cat ATVs and snowmobiles are not "motorcycles" under the Motor Vehicle Franchise Act because ATVs and snowmobiles are not required to be registered pursuant to the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2008)). Arctic Cat contended that the Motor Vehicle Franchise Act's definition of "motor vehicle" meant that any vehicle that is not required to be registered under the Illinois Vehicle Code cannot be a "motorcycle" pursuant to section 10.1(a). In short, Arctic Cat argued that

-4-

Scholl's did not own a dealership that was regulated by the Motor Vehicle Franchise Act.

¶ 14 On November 16, 2009, Scholl's filed its response to Arctic Cat's motion to dismiss the notice of protest. Scholl's asserted that, contrary to Arctic Cat's argument, Scholl's did not file its notice of protest as a motorcycle dealer and stated that it has never sold motorcycles. Scholl's noted that it sells ATVs, snowmobiles, parts and accessories. Scholl's argued that ATVs are off-highway vehicles as contemplated by section 10.1(a). Scholl's contended that, by including "off-highway vehicles" in the definition of "motorcycles," the Motor Vehicle Franchise Act created a subclass of vehicles that is regulated by the statute. Scholl's conceded, however, that the term "off-highway vehicle" does not meet all the elements of the definition of a motor vehicle. Scholl's also noted that, at one time, ATVs had three wheels, citing *Robertson v. Yamaha Motor Corp., U.S.A.*, 143 F.R.D. 194, 195 (S.D. Ill. 1992).

¶ 15 In addition, Scholl's pointed out that the issue of whether an ATV dealership is a motor vehicle franchise regulated by the Motor Vehicle Franchise Act is a matter of first impression. Scholl's attached to its response a certificate from the Secretary of State's office, dated January 6, 2009, and entitled, "Registration for Authority to Deal in Vehicles," the effect of which "license[d] the aforementioned business [Scholl's] as provided under the Illinois Vehicle Code" to sell its vehicles. Scholl's also attached an Illinois Department of Revenue "State Tax Transaction Return" form for "Vehicles, Watercraft, Aircraft, Trailers and Mobile Homes," to support its argument that ATVs are motor vehicles, as the tax Scholl's charged its customers was the motor vehicle tax. Scholl's argued that Arctic Cat's motion to dismiss should be denied and that the matter should proceed to discovery.

¶ 16 On January 28, 2010, the hearing officer duly appointed by the Board published his findings and proposed decision. The hearing officer noted the definition of "motorcycle" and stated that, based on the definition, a "motorcycle" must necessarily be a motor vehicle. The hearing officer then noted "motor vehicles" under section 2(a) of the Motor Vehicle Franchise Act are "any motor driven vehicle required to be registered under 'The Illinois Vehicle Code.' " The hearing officer pointed out it was uncontested that neither the ATVs nor the snowmobiles sold by Scholl's were required to be registered under the Illinois Vehicle Code. The hearing officer concluded that the ATVs and snowmobiles sold by Scholl's were not "motorcycles" as that term is defined in the Motor Vehicle Franchise Act. In support of its findings, the hearing officer explained that the phrase "off-highway vehicle" is limited by the beginning of the definition of "motorcycles." The hearing officer stated, "[o]ff-highway vehicles that are not motor vehicles (i.e. do not need to be registered pursuant to the Illinois Vehicle Code) are not 'motorcycles' as that term is defined by the Act." The hearing officer granted Arctic Cat's motion to dismiss.

¶ 17 On February 10, 2010, Scholl's filed exceptions to the proposed decision. Scholl's argued that the hearing officer's construction of section 10.1(a) of the Motor Vehicle Franchise Act rendered the "off-highway vehicles" language meaningless or void. Scholl's asserted that, when the legislature amended section 10.1(a) to replace "all terrain vehicles" with "off-highway vehicles" in 1994, it could have easily added ATVs to the exclusionary language in the definition of "motorcycles," but did not do so. Scholl's contended the language was amended to include "off-highway vehicles," not to eliminate a class of vehicles, but to

expand the category and standardize the term. Scholl's relied upon a statement from the legislative debates for the 1994 amendment made by Senator Frank C. Watson. Senator Watson stated that the amendment "changes the reference in the Motor Vehicle Franchise Act from ATVs, which is currently language, to off-highway vehicles, to mirror the federal reference." 88th Gen. Assem., Senate Proceedings, April 15, 1993, at 172-73 (statements of Senator Watson). Scholl's pointed to language in the definition section of the Motor Vehicle Franchise Act preceding the definition of "motor vehicle," which states, "[a]s used in this Act, the following words shall, unless the context otherwise requires, have the following meanings." 815 ILCS 710/2 (West 2008). Scholl's asserted that the language "off-highway vehicle" in section 10.1(a) is a prime example for the application of the language "unless the context otherwise requires," in section 2 of the Motor Vehicle Franchise Act. Scholl's argued that its dealership "sells at least one of the types of vehicle[s] covered by the [Motor Vehicle Franchise Act]."

¶ 18    On February 24, 2010, the Board, having reviewed the proposed decision by the hearing officer and Scholl's exceptions to the same, dismissed Scholl's notice of protest with prejudice. Scholl's sent the Board a notice of intent to seek judicial review on March 4, 2010.

¶ 19    Scholl's filed its complaint for administrative review against Arctic Cat, the Board and the Board's chairperson, Terrence M. O'Brien, on March 22, 2010. Scholl's asserted that the Board erred by not staying the termination as required pursuant to section 10.1(d) of the Motor Vehicle Franchise Act. In requesting reversal and remand of the Board's decision, Scholl's argued that there is a conflict between sections 2(a) and 10.1(a) of the Motor Vehicle Franchise Act. Scholl's contended that a specific class of vehicles intended to be covered by the Motor Vehicle Franchise Act, namely, "off-highway vehicles" in section 10.1(a), was also excluded from coverage by virtue of the definition of "motor vehicle" as defined in section 2(a). Scholl's asserted that the Board's decision rendered the "off-highway vehicle" language meaningless. Scholl's requested an adjudication of its case on the merits and, if necessary, a determination of Arctic Cat's good cause for termination of the dealership agreements.

¶ 20    Each of the parties briefed the issues and the circuit court heard oral argument on July 29, 2010. The court entered an order on September 17, 2010, finding that the Board correctly interpreted section 10.1(a) and affirming the decision of the Board. Specifically, the experienced jurist below concluded:

> "This Court agrees with the interpretation of the Board and Arctic Cat and finds that [section 10.1(a)] is clear and unambiguous. The definition of 'motorcycle' includes only those 'off-highway' vehicles which are driven or moved upon a highway, and, therefore, required to be registered under the [Illinois Vehicle Code]. Scholl's interpretation, which would add unregistered off-highway vehicles that are not driven or moved upon a highway, would create an inconsistency with the definition of motor vehicle, and, therefore, is not reasonable. Accordingly, the Court does not reach Scholl's ambiguity argument."

Scholl's timely appeals.

¶ 21                                II. ANALYSIS

¶ 22    On appeal, Scholl's asserts that: (1) the Board erred by granting Arctic Cat's motion to dismiss the notice of protest; (2) the Board erred by not staying the termination of the dealership agreements pursuant to section 10.1(d) of the Motor Vehicle Franchise Act; and (3) the circuit court erred by affirming the Board's final order.

¶ 23    Arctic Cat responds that the plain terms of the Motor Vehicle Franchise Act do not provide statutory coverage to Scholl's. Arctic Cat argues that the Motor Vehicle Franchise Act applies only to dealers that sell motor-driven vehicles that are require to be registered under the Illinois Vehicle Code. Arctic Cat contends that the plain language of section 10.1(a) confirms that Scholl's is not in the business of selling motorcycles. In addition, Arctic Cat asserts that the legislature created specific regulations for ATV dealerships under the Illinois Equipment Fair Dealership Law (815 ILCS 715/1 *et seq.* (West 2010)). Arctic Cat further avers that, even if this court accepts Scholl's argument that sections 2(a) and 10.1(a) are ambiguous, the court should defer to the Board's interpretation of the statute. Finally, Arctic Cat argues that Scholl's notice of protest only challenged Arctic Cat's termination of the "July 2007" snowmobile dealership agreement and, because Scholl's did not file a notice of protest challenging Arctic Cat's termination of the August 2006 ATV dealership agreement, the Board had no jurisdiction to adjudicate the propriety of Arctic Cat's decision to terminate Scholl's ATV dealership.

¶ 24    The Board responds that its decision should be affirmed because the notice of protest did not state a cognizable violation of the Motor Vehicle Franchise Act. The Board argues that the notice of protest only alleged a violation of section 4(d)(6), a provision that applies only to manufacturers and dealers of motor vehicles. The Board asserts it is undisputed that snowmobiles and ATVs are not "motor vehicles" as defined by section 2(a) of the Motor Vehicle Franchise Act. The Board contends that section 4(d)(6) does not apply to "motorcycles" that are not also "motor vehicles." The Board avers that section 10.1 extends additional protections to dealers of "motorcycles," but does not extend the entirety of the Motor Vehicle Franchise Act to such dealers unless they are also "motor vehicle dealers." In addition, the Board argues that the court should not review Scholl's claim regarding a stay of termination of the dealer agreements because the argument is moot, as no effective relief can be granted.


¶ 25                             A. Standard of Review

¶ 26    Our supreme court has noted that in any proceeding for administrative review, the role of the reviewing court is "to review the decision of the administrative agency, rather than that of the circuit court." *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 551-52 (2009). An administrative agency's conclusions of law are reviewed *de novo*. *Sangamon County Sheriff's Department v. Illinois Human Rights Comm'n*, 233 Ill. 2d 125, 136 (2009). The interpretation of statutes likewise is reviewed *de novo*. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008).

¶ 27    B. Statutory Construction of Section 10.1(a) of the Motor Vehicle Franchise Act

¶ 28    Initially, we reject the Board's attempt to limit the scope of Scholl's notice of protest. A review of the notice of protest clearly shows that Scholl's sought a hearing under sections 12 and 29 of the Motor Vehicle Franchise Act and specifically marked on the applicable form both sections 4(d)(6) and 10.1 as violations to be heard by the Board. We decide in this appeal whether Scholl's, an ATV and snowmobile dealership, is eligible to claim violations under the Motor Vehicle Franchise Act against Arctic Cat. Whether ATVs and snowmobiles fall within the definition of "motorcycle" pursuant to section 10.1(a) of the Motor Vehicle Franchise Act is determinative of this case.

¶ 29    Section 10.1(a) has not previously been interpreted, so we address this as a question of first impression. The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent, and the plain language of the statute is the best indication of that intent. *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 37-38 (2009). "The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning." *Roselle Police Pension Board*, 232 Ill. 2d at 552. "The statute should be evaluated as a whole, with each provision construed in connection with every other section." *Id*. If the statutory language at issue is clear and unambiguous, a reviewing court must interpret the statute according to its terms without resorting to aids of statutory construction. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995).

¶ 30    Pertinent here, "in cases involving an agency's interpretation of a statute which the agency is charged with administering, the agency's interpretation is considered relevant but not binding on the court." *Id*. "Nevertheless, the interpretation of a statute by involved administrative bodies constitutes 'an informed source for guidance when seeking to ascertain the legislature's intention when the statute was enacted.' " *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 116 (2005) (quoting *Johnson v. Marshall Field & Co.*, 57 Ill. 2d 272, 278 (1974)).

¶ 31    We conclude the language of section 10.1(a) of the Motor Vehicle Franchise Act is plain and unambiguous. Examining the language and structure of section 10.1(a), it is readily apparent on its face that any vehicle considered to be a "motorcycle" must also be a "motor vehicle" as defined in section 2(a), which provision also is unambiguous on its face. As a result, a "motorcycle" as defined in section 10.1(a) must also be registered under the Illinois Vehicle Code. The phrase, "and including off-highway vehicles," in section 10.1(a) is limited by the plain language of that statute to motor-driven vehicles "required to be registered" under the Illinois Vehicle Code. 815 ILCS 710/2(a), 10.1(a) (West 2008). Succinctly stated, an "off-highway vehicle" that fits the definition of "motorcycle" under section 10.1(a) must also be a motor vehicle that is required to be registered under the Illinois Vehicle Code.

¶ 32    "It is improper for a court to depart from the plain terms of a statute to read in a condition that would conflict with or defeat the meaning and intent of the provision in issue." *Branson*, 168 Ill. 2d at 258. Accordingly, if this court were to accept Scholl's proposed inclusion of ATVs and snowmobiles in the definition of "motorcycle," we would do violence to the Illinois Vehicle Code registration requirement provision and cause disharmony between sections 10.1(a) and 2(a).

¶ 33    Evaluating the Motor Vehicle Franchise Act as a whole, with each provision construed in connection with every other section, the common thread throughout is use of the term "motor vehicle." For example, section 1.1 of the Motor Vehicle Franchise Act, entitled, "Declaration of purpose," states that, "in order to promote the public interest and welfare, and in the exercise of its police power, it is necessary to regulate *motor vehicle* manufacturers *** and to regulate dealers of *motor vehicles* doing business in this State in order to prevent frauds, impositions and other abuses upon its citizens, to protect and preserve the investments and properties of the citizens of this State, and to provide adequate and sufficient service to consumers generally." (Emphasis added.) 815 ILCS 710/1.1 (West 2008). Section 1.1 makes clear that the umbrella of protection provided by the Motor Vehicle Franchise Act is extended to "motor vehicles" as defined in section 2(a). Logically, it follows that section 10.1(a) defines a "motorcycle" as "every *motor vehicle* having a seat or saddle for use of the rider and designed to travel with 3 or less wheels in contact with the ground." (Emphasis added.) 815 ILCS 710/10.1(a) (West 2008). There is no language in the Motor Vehicle Franchise Act to support Scholl's argument that ATVs and snowmobiles are included as "off-highway vehicles" within section 10.1(a). The term "off-highway vehicle" is not defined by the Motor Vehicle Franchise Act.

¶ 34    Moreover, Scholl's concedes that the ATVs and snowmobiles sold from its dealership are not required to be registered under the Illinois Vehicle Code. Scholl's also concedes that the term "off-highway vehicle" does not meet all the elements of the definition of a motor vehicle. Thus, even if we were to accept Scholl's argument that ATVs and snowmobiles are "off-highway vehicles" within the meaning of "motorcycles" as defined in section 10.1(a), the ATVs and snowmobiles sold by Scholl's still would not qualify for coverage under the Motor Vehicle Franchise Act because they are not required to be registered under the Illinois Vehicle Code.

¶ 35    Although we need not look beyond the plain language of section 10.1(a), we note that Scholl's is unable to direct us to any legislative debate to support its argument. Scholl's references the legislative debate from the 1994 amendment to section 10.1(a), that changed "the reference in the Motor Vehicle Franchise Act from ATVs, which is currently language, to off-highway vehicles, to mirror the federal reference." 88th Gen. Assem., Senate Proceedings, April 15, 1993, at 172-73 (statements of Senator Watson). Scholl's has not provided, and we have not found, the corresponding "federal reference" that may shed further light on this subject.

¶ 36    We also reviewed the legislative debates upon the enactment of the Motor Vehicle Franchise Act and later amendments. We found nothing that would conflict with the best evidence of legislative intent, namely, the language used in the statute itself, which we have given its plain and ordinary meaning.

¶ 37    Indeed, as Arctic Cat has pointed out, our legislature recently created statutory protection for ATV dealerships by amendment of section 2(4) of the Equipment Fair Dealership Law (815 ILCS 715/2 (West 2010) (amended by Pub. Act 96-1155, § 5 (eff. July 21, 2010))). Pursuant to section 2(4), a "retailer":

        "shall mean any person, firm or corporation engaged in the business of selling and

retailing outdoor power equipment including but not limited to *all-terrain vehicles* or off-highway motorcycles, farm implements, farm machinery, attachments accessories or repair parts and retailers of construction or industrial equipment, attachments or accessories or repair parts, *but shall not include retailers of \*\*\* motor vehicles* and related automotive care and replacement products normally sold by such retailers." (Emphasis added.) 815 ILCS 715/2(4) (West 2010).

¶ 38    The legislative debates from the recently amended provision demonstrate the legislature's intent to protect ATV dealerships such as Scholl's. Senator Gary Forby stated that the amendment to the Equipment Fair Dealership Law "adds ATV/off-highway motorcycles to be–definition of outdoor power equipment under the law to better protect retailers and those vehicles." 96th Gen. Assem., Senate Proceedings, April 29, 2010, at 8 (statements of Senator Forby). In short, it appears our legislature created a specific statutory protection for the class of vehicles sold by Scholl's because there was a void in that area.

¶ 39    Considering the plain and unambiguous language of the Motor Vehicle Franchise Act, its legislative history and the recently amended section 2(4) of the Equipment Fair Dealership Law, we determine the legislature intended section 10.1(a) to apply only to motorcycles and off-highway vehicles required to be registered under the Illinois Vehicle Code. We hold that the ATVs and snowmobiles sold by Scholl's do not fit within the definition of "motorcycles" in section 10.1(a) of the Motor Vehicle Franchise Act. We therefore conclude that Scholl's is ineligible to claim violations under the Motor Vehicle Franchise Act against Arctic Cat. Accordingly, we affirm the decision of the Board to dismiss Scholl's notice of protest and the circuit court's affirmance of the Board's decision.

¶ 40    III. CONCLUSION

¶ 41    Based on the foregoing, we affirm the decision of the Illinois Motor Vehicle Board to dismiss Scholl's notice of protest. In addition, we affirm the decision of the circuit court of Cook County to affirm the Illinois Motor Vehicle Board's final order dismissing Scholl's notice of protest.

¶ 42    Affirmed.