# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Gutraj v. Board of Trustees of the Police Pension Fund*, 2013 IL App (2d) 121163

| | |
|---|---|
| Appellate Court Caption | CONRAD GUTRAJ, Plaintiff-Appellee, v. THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE VILLAGE OF GRAYSLAKE, ILLINOIS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1163 |
| Filed | June 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court upheld the trial court's order that plaintiff, a police officer awarded a "line of duty" disability pension pursuant to section 3-114.1 of the Pension Code, was entitled to annual 3% pension increases under both section 3-111.1(c) and 3-114.1(d). |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-MR-350; the Hon. Diane E. Winter, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Jeffrey A. Goodloe, of Puchalski Goodloe Marzullo, LLP, of Libertyville, for appellant.

James L. Dobrovolny, of Dobrovolny Law Offices, of Urbana, for appellee.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices McLaren and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant, the Board of Trustees of the Police Pension Fund of the Village of Grayslake, Illinois, appeals from an order of the circuit court of Lake County ruling that plaintiff, Conrad Gutraj, is entitled to pension increases under both section 3-111.1(c) and section 3-114.1(d) of the Illinois Pension Code (Code) (40 ILCS 5/3-111.1(c), 3-114.1(d) (West 2012)). We affirm.

¶ 2                       BACKGROUND

¶ 3    On March 5, 2012, plaintiff filed a complaint for *mandamus* and declaratory relief (see 735 ILCS 5/2-701 (West 2012) ("[t]he court may, in cases of actual controversy, make binding declarations of rights")), arising out of the following undisputed facts. Plaintiff became a police officer for the Village of Grayslake on July 1, 1975. On the same date, he joined the Grayslake police pension fund. On April 12, 2000, plaintiff suffered a heart attack while performing his duties as a police officer. As a result of his heart attack, plaintiff was no longer able to work as a policeman and was suspended from police service on September 19, 2000. On October 14, 2000, defendant awarded plaintiff, who was 49 years old, a "line of duty" disability pension pursuant to section 3-114.1 of the Code. In accordance with the provisions of the Code then in effect, plaintiff's pension was 65% of his salary as of his last day of service.

¶ 4    In 2001, plaintiff availed himself of a recent amendment to section 3-114.1 of the Code, which allowed for an annual noncompounded 3% increase to his pension, provided that he met certain conditions. On March 4, 2011, plaintiff turned 60 years of age. On October 10, 2011, plaintiff demanded an additional 3% increase pursuant to section 3-111.1(c) of the Code, which provided that the monthly pension of a police officer who is retired on disability shall increase, in January of the year following the year of attaining age 60, by 3% of the original pension for each year that he or she received pension payments, and for an additional 3% increase in each January thereafter. Defendant contends that it did not formally deny

plaintiff's request for the increase under section 3-111.1(c). Nevertheless, defendant agrees that there is a controversy within the meaning of section 2-701 of the Code of Civil Procedure.

¶ 5 The parties filed cross-motions for summary judgment on the issue of whether plaintiff was entitled to a 3% increase under both sections of the Code. On September 26, 2012, the trial court ruled in a memorandum opinion and order that *mandamus* was inappropriate because plaintiff's averment that defendant rejected his request was made on information and belief complaint, the trial court held that plaintiff was entitled to increases under both sections of the Code. Defendant appealed the trial court's ruling on the declaratory judgment count.

¶ 6                                    ANALYSIS

¶ 7 We first address plaintiff's motion to strike defendant's brief, or portions thereof, which we ordered taken with the case. Plaintiff contends that certain charts included in defendant's statement of facts are matters outside the record. To the contrary, the charts merely illustrate the record facts. Plaintiff also objects to defendant's use of the acronym "COLA," contending that the term has a "negative connotation in today's highly charged discussion regarding public pensions." Plaintiff is concerned that the term "COLA" will prejudice us against him. This court is able to separate political hyperbole, which plaintiff unnecessarily interjected into the discussion by filing the motion, from reasoned arguments. Defendant's brief in its entirety presents the latter. Accordingly, the motion to strike is denied.

¶ 8 We turn now to the merits. The issue before us is whether the pension increases, provided by two different sections of the Code, are mutually exclusive. The resolution of the issue requires us to engage in statutory construction. The primary rule of statutory construction is to ascertain and give effect to the legislature's intent and meaning. *Brucker v. Mercola*, 227 Ill. 2d 502, 513 (2008). The language of the statute is the best indication of legislative intent, and, where it is clear and unambiguous, there is no need to resort to other aids of construction. *Brucker*, 227 Ill. 2d at 513. However, if the language used in the statute is susceptible to more than one equally reasonable interpretation, the court can look to extrinsic sources to determine the legislative intent. *Brucker*, 227 Ill. 2d at 513-14. All provisions of a statute are viewed as a whole, and we interpret all words and phrases in light of other relevant provisions. *Brucker*, 227 Ill. 2d at 514. "Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous." *Brucker*, 227 Ill. 2d at 514. "Where the language is clear, the statute cannot be revised to include exceptions, limitations, or conditions that the legislature did not express." *People v. Davis*, 2012 IL App (2d) 100934, ¶ 14. When the legislature uses certain language in one part of a statute and different language in another part, we assume that different meanings were intended. *Davis*, 2012 IL App (2d) 100934, ¶ 15. Statutory construction is a question of law, which we review *de novo*. *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 552 (2009).

¶ 9 Here, the parties dispute the interpretation of two provisions in article 3 of the Code. Subsection (c) of section 3-111.1 provides as follows:

"(c) The monthly pension of a police officer who retires on disability or is retired for disability shall be increased in January of the year following the year of attaining age 60, by 3% of the original grant of pension for each year he or she received pension payments. In each January thereafter, the police officer shall receive an additional increase of 3% of the original pension." 40 ILCS 5/3-111.1(c) (West 2012).

Section 3-114.1 provides, in relevant part, as follows:

"(a) If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension equal to the greatest of (1) 65% of the salary attached to the rank on the police force held by the officer at the date of suspension of duty or retirement, (2) the retirement pension that the police officer would be eligible to receive if he or she retired (but not including any automatic annual increase in that retirement pension), or (3) the pension provided under subsection (d), if applicable.

\* \* \*

(d) A disabled police officer who (1) is receiving a pension under this Section on the effective date of this amendatory Act of the 91st General Assembly, (2) files with the Fund, within 30 days after that effective date and annually thereafter while the pension remains payable, a written application for the benefits of this subsection, including an affidavit stating that the applicant has not earned any income from gainful employment during the most recently concluded tax year and a copy of his or her most recent Illinois income tax return, (3) has service credit in the Fund for at least 7 years of active duty, and (4) has been receiving the pension under this Section for a period which, when added to the officer's total service credit in the Fund, equals at least 20 years, shall be eligible to receive an annual noncompounded increase in his or her pension under this Section, equal to 3% of the original pension." 40 ILCS 5/3-114.1 (West 2012).

Public Act 91-939 (eff. Feb. 1, 2001) amended section 3-114.1 by adding subsections (a) through (d). In subsection (a), the legislature inserted the language "equal to the greatest," following the words "the police officer shall be entitled to a disability retirement pension." The amendment then designated as item (1) the provision that the officer was entitled to 65% of the salary attached to the rank held at the date of suspension of duty or retirement and added items (2) and (3) pertaining to the election of pension options; it also added subsection (d) pertaining to increases to current pension obligations.

¶ 10    The trial court held that section 3-111.1(c) and section 3-114.1(d) unambiguously provide for separate annual 3% increases to the pension benefits of disabled police officers who meet separate and narrowly tailored prerequisites. The court found that the sections are not mutually exclusive and that both benefits apply to a qualifying pension beneficiary. The court recognized that no appellate court has addressed this issue. In resolving the dispute, the court employed the analytical approach used by our supreme court in *Roselle*. In *Roselle*, the statute was silent as to whether the spouse of a deceased police officer was entitled to receive annual increases on the line-of-duty pension awarded to her following her husband's death.

*Roselle*, 232 Ill. 2d at 548-49, 554. In resolving that issue, our supreme court looked to other provisions in the Code in which the legislature had authorized such increases to survivors. *Roselle*, 232 Ill. 2d at 556. "These provisions clearly demonstrate that the legislature knew exactly how to authorize such annual increases when it intended to do so." *Roselle*, 232 Ill. 2d at 556. Because the legislature failed to provide, with equal clarity, for annual increases in pension benefits awarded to survivors of police officers who had been granted line-of-duty pensions, the supreme court concluded that no such annual increases were authorized. *Roselle*, 232 Ill. 2d at 556-57. Here, in utilizing *Roselle*'s analytical approach, the trial court reasoned that, because the legislature included language in other parts of the Code making certain benefits mutually exclusive but failed to do so in sections 3-111.1(c) and 3-114.1(d), the legislature did not intend mutual exclusivity. The trial court observed that the legislature "knew exactly how" to draft language that granted one pension benefit increase in lieu of another pension benefit increase. Additionally, the trial court reasoned that construing the sections as mutually exclusive would render one section or the other superfluous.

¶ 11   Defendant distinguishes *Roselle*, saying that, unlike in *Roselle*, here plaintiff did not apply for a benefit that was not authorized by statute. However, the trial court used *Roselle* not because it was factually similar to our case but because it provided an appropriate analytical framework.

¶ 12   Defendant contends that the absence of "mutually exclusive" language renders both sections 3-111.1(c) and 3-114.1(d) ambiguous, requiring an analysis under *Nowak v. City of Country Club Hills*, 2011 IL 111838. *Nowak* involved interpretation of section 10(a) of the Public Safety Employee Benefits Act (820 ILCS 320/10(a) (West 2006)), which provided that an employer must pay the entire health insurance premium for an injured police officer and his family when the officer suffers a catastrophic injury in the line of duty. *Nowak*, 2011 IL 111838, ¶ 1. Section 10(a)'s silence as to when an employer's obligation to pay the insurance premium attached led to two reasonable interpretations: that the obligation attached either on the date the officer suffered the injury or on the date the officer was awarded a line-of-duty pension. *Nowak*, 2011 IL 111838, ¶ 12. Thus, section 10(a) was ambiguous, and the court resorted to canons of construction. *Nowak*, 2011 IL 111838, ¶ 13.

¶ 13   In contrast, section 3-111.1(c) and section 3-114.1(d) of the Code are unambiguous. Neither section is susceptible to two or more reasonable interpretations. They clearly bestow two different benefits that have different criteria. Under section 3-114.1(d), a disabled pensioner not otherwise gainfully employed receives a noncompounded 3% increase. Under section 3-111.1(c), all pensioners receive a compounded 3% increase after turning 60. The absence of "mutually exclusive" language is not silence on the issue here, because the two sections clearly and unambiguously talk about different things. If we were to decide that plaintiff is entitled to only one increase, we would fail to give effect to both sections. Moreover, where the legislature has not chosen one over the other, this court cannot make that choice.

¶ 14   Under the guise that the legislature left a silence that we must fill, defendant really is asking us to read a limitation into sections 3-111.1(c) and 3-114.1(d) that is not there, namely, that the increase granted by section 3-114.1(d) is in lieu of the increase granted by section 3-111.1(c). As the petitioner did in *Illinois Bell Telephone Co. v. Illinois Commerce*

*Comm'n*, 362 Ill. App. 3d 652, 660 (2005), defendant here is inferring a limitation from other parts of the Code. The court in *Illinois Bell* rejected that approach, holding that where a provision, standing alone, is crystal clear, "no other section or part of the act may be applied to create doubt." *Illinois Bell*, 362 Ill. App. 3d at 660. "Thus, we should normally assume that whenever the legislature intended a limitation, it expressed that limitation; conversely, if the limitation is absent from the text, the legislature presumably did not intend the limitation." *Illinois Bell*, 362 Ill. App. 3d at 660. "[If] the legislature uses certain words in one instance and different words in another, it intends different results." (Internal quotation marks omitted.) *Illinois Bell*, 362 Ill. App. 3d at 661.

¶ 15 Here, for example, the legislature specifically provided in section 3-111.1(e) that the increases granted by that provision are in lieu of the increases granted by section 3-111.1(a). So, when the legislature did not use similar language in section 3-111.1(c), we can presume that it intended a different result. In other words, the legislature knew how to express that one increase is in lieu of another. See *Illinois Bell*, 362 Ill. App. 3d at 661; see also *Davis*, 2012 IL App (2d) 100934, ¶ 17 ("[I]t is apparent that the legislature chose not to include a mental state for the 'without authority' element, evidenced by the fact that the legislature specifically included the mental state of knowledge for the other two elements. Had the legislature intended to apply a mental state to the 'without authority' element, it certainly had the know-how and ability to do so."); *People v. Fort*, 373 Ill. App. 3d 882, 887 (2007) ("[T]he legislature has demonstrated it knows how to make the $5-per-day credit inapplicable to a special fund."); *People v. Staton*, 248 Ill. App. 3d 799, 803-04 (1993) ("The legislature has demonstrated that it knows how to make the general requirements of the Vehicle Code applicable to snowmobiles when it wants to.").

¶ 16 Defendant contends that giving plaintiff both increases leads to an absurd result in that pensioners disabled in the line of duty who are covered by section 3-114.1(d) are few and would become an elite class. To the contrary, the result is not unjust or absurd. The legislature chose to give a 3% increase before age 60 to disabled pensioners who cannot obtain other gainful employment. Then, after turning 60, all disabled pensioners receive a 3% increase regardless of employment status. The two increases fulfill two different purposes. It is not our province to assess the wisdom of legislative objectives. *In re Marriage of Semmler*, 107 Ill. 2d 130, 138 (1985).

¶ 17 Alternatively, defendant argues that section 3-114.1(d) unambiguously creates its own pension, which plaintiff elected in lieu of any other benefits. We reject this argument. Section 3-114.1(a) provides that a police officer retired on disability may choose the greatest of options (1), (2), and (3). Subsection (d) is simply a method of computing option (3). The pension is still the pension granted by subsection (a).

¶ 18                                                CONCLUSION

¶ 19 For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 20 Affirmed.