# Illinois Official Reports

## Appellate Court

*Village of Westmont v. Illinois Municipal Retirement Fund*,
2015 IL App (2d) 141070

| | |
|---|---|
| Appellate Court Caption | THE VILLAGE OF WESTMONT, Plaintiff-Appellant, v. THE ILLINOIS MUNICIPAL RETIREMENT FUND; THE ILLINOIS MUNICIPAL RETIREMENT BOARD OF TRUSTEES; and NATALIE COPPER, JOHN PIECHOCINSKI, WILLIAM STAFFORD, GWEN HENRY, JEFFREY STULIR, SHARON THOMPSON, SUE STANISH, and TOM KUEHNE, in Their Official Capacities as Members of the Illinois Municipal Retirement Fund Board of Trustees, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-14-1070 |
| Filed | August 13, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 14-MR-520; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | John R. Zemenak, of Rathje & Woodward, LLC, of Wheaton, for appellant.<br><br>Beth Janicki-Clark, of Illinois Municipal Retirement Fund, of Oak Brook, for appellees. |

Panel               JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Presiding Justice Schostok and Justice Birkett concurred in the judgment and opinion.

## OPINION

In 2013, it came to the attention of the staff (Staff) of defendant the Illinois Municipal Retirement Fund (IMRF) that plaintiff, the Village of Westmont, had not enrolled in the IMRF its part-time firefighters who worked 1,000-plus hours per year, and it did not otherwise provide them with a local pension fund. Due to this coverage gap, the Staff reclassified Westmont's "part-time, 1000-plus" firefighters from "IMRF Authorized Agent Manual *Group IV* Firefighters" (said firefighters being excluded from IMRF participation, because, under the IMRF's reading, their employing municipalities *do* provide firefighters with a local pension fund) to "IMRF Authorized Agent Manual *Group VI* Firefighters" (said firefighters being required to participate in the IMRF, because, under the IMRF's reading, their employing municipalities do *not* provide firefighters with a local pension fund). The IMRF created each of these "Group" classifications in its IMRF Authorized Agent Manual (IMRF manual or, simply, manual), which sets forth the IMRF's administrative rules and explains and carries out pertinent dictates of the Illinois Pension Code (40 ILCS 5/1-101 *et seq.* (West 2014)).

Westmont appealed the Staff's reclassification to defendant the IMRF Board of Trustees (Board). It argued that, under a plain reading of the manual, its part-time, 1,000-plus firefighters fit into Group IV and that, in any case, the Staff was estopped from reclassifying its part-time, 1,000-plus firefighters. The Board affirmed the Staff's reclassification. It stated that the Group IV classification conflicted with the Pension Code's requirement that a municipality such as Westmont, which has not employed at least one full-time firefighter, and therefore has not provided a local pension fund for its firefighters (40 ILCS 5/4-101, 4-103 (West 2014)), must enroll its part-time, 1,000-plus firefighters in the IMRF (40 ILCS 5/7-109, 7-137(a), (e) (West 2014)). Westmont appealed to the circuit court. The circuit court affirmed the Board. Westmont now appeals to this court, and, because we agree that allowing Westmont's fire department to remain in Group IV would conflict with the Pension Code, we affirm the Board and the circuit court.

## I. BACKGROUND

In 1938, Westmont formed a village fire department, using an all-volunteer force. In 1961, Westmont joined the IMRF. At that time, Westmont did not have any full-time firefighters, and, because it was not required, it had not formed a local pension fund under article IV of the Pension Code. 40 ILCS 5/4-101 *et seq.* (West 2014). Article IV of the Pension Code requires that a municipality with between 5,000 and 500,000 in population and with *full-time paid* firefighters must create its own *local* pension fund (as opposed to article VII of the Pension Code, which covers the *IMRF* pension fund). 40 ILCS 5/4-101, 4-103(1) (West 2014).

¶ 5        The IMRF initially classified Westmont's fire department as a Group IV department. According to the IMRF manual, Group IV departments are those employed by particular municipalities:

> "These governmental units were under 5,000 in population at the time they came under Social Security by entering into an agreement with the State Social Security Unit, and they had not established a fire pension fund by referendum at the time. They now have a population of 5,000 or more, *and/or* have formed a fire pension fund.

> No firefighters (volunteers, part-time, etc.) in these governmental units are covered by IMRF even though they do not participate in [the local] pension fund." (Emphasis added.)

Thus, a municipality's fire department fits into Group IV if the municipality crosses the 5,000 population threshold *and/or* it has formed a local pension fund (under article IV, as opposed to participating in the IMRF under article VII). Westmont's department fit into Group IV solely because Westmont crossed the 5,000 population threshold. Again, Westmont had not formed a local pension fund under article IV, because it was exempted from doing so when it did not have a single full-time paid firefighter on the force.

¶ 6        By the early 1990s, Westmont no longer had any volunteer firefighters on staff. Rather, its force consisted solely of part-time, paid employees; it included firefighters who worked 1,000 or more hours per year (*i.e.*, averaging over 20 hours per week if one assumes two weeks of vacation time), but no firefighter carried full-time status (which, depending on differing representations in the record, is either 36 or 39 hours per week). Westmont was unsure whether it was required to participate in the IMRF on behalf of its part-time, 1,000-plus firefighters.

¶ 7        On the one hand, Westmont knew that the IMRF had given its fire department a Group IV classification and that Group IV departments were not required to participate in the IMRF. On the other hand, Westmont recognized that, collectively, sections 7-137(a) and 7-137(e) of the Pension Code require all municipal employees who work 1,000 or more hours per year to participate in the IMRF:

> "(a) The persons described in this paragraph (a) shall be included within and be subject to this Article and eligible to benefits from this fund, beginning upon the dates hereinafter specified:

> 1. Except as to the employees specifically excluded under the provisions of this Article, all persons who are employees of any municipality (or instrumentality thereof) or participating instrumentality on the effective date of participation of the municipality or participating instrumentality beginning upon such effective date.

> * * *

> (e) Any participating municipality or participating instrumentality, other than a school district or special education joint agreement created under Section 10-22.31 of the School Code, *may*, by a resolution or ordinance duly adopted by its governing body, *elect to exclude from participation* and eligibility for benefits all *persons* who are employed after the effective date of such resolution or ordinance and *who occupy an office or are employed in a position normally requiring performance of duty for less than 1000 hours per year* * * *." (Emphases added.) 40 ILCS 5/7-137(a), (e) (West 2014).

In other words, while subsection (a) states that all employees of participating municipalities must participate in the IMRF, subsection (e) allows those municipalities to exclude from IMRF participation employees working less than 1,000 hours per year. There is no such exclusion for employees working 1,000-plus hours per year.

¶ 8 Westmont was also aware that section 7-109(2)(b) of the Pension Code set forth an exclusion to the general rule that the part-time, 1,000-plus employees must be enrolled in the IMRF; that is, *if* the employing municipality is "required by law" to establish a local pension fund, by virtue of having at least one full-time firefighter, for example (40 ILCS 5/4-101, 4-103 (West 2014)), *then*, the municipality need not participate in the IMRF on behalf of its firefighters. 40 ILCS 5/7-109(2)(b) (West 2014). Here, of course, the section 2-109(2)(b) exception did not apply, as Westmont did not have at least one full-time firefighter and did not set up a local pension fund. Thus, while the manual *excluded* Westmont's fire department from IMRF participation, through the Group IV classification, the Pension Code *required* Westmont's employees who worked 1,000-plus hours per year to participate, through sections 7-137, 7-109(2)(b), 4-101, and 4-103.

¶ 9 As a result of this discrepancy, in 1992 Westmont's (then assistant) village manager, Ronald Searl, telephoned an IMRF field representative, Tecya Anderson, to determine whether Westmont was required to participate in the IMRF on behalf of its part-time, 1,000-plus firefighters. Searl believed that he could trust Anderson's information, because the IMRF manual states that "IMRF Field Representatives are available to assist you and your members. Seven field representatives across the state are available to answer questions one-on-one, speak to groups about IMRF benefits and law, provide assistance with reporting errors, and much more." Anderson assured Searl that Westmont's part-time, 1,000-plus firefighters were excluded from IMRF participation, due to its department's correct Group IV classification. Searl requested written confirmation of this fact, and Anderson stated that the manual's description of a Group IV department provided all the written confirmation Westmont would need. Anderson further told Searl that the Group IV classification could not change. As a result of Anderson's oral representations, Westmont did not enroll its part-time, 1,000-plus firefighters in the IMRF. Westmont relied on Anderson's representations in structuring its fire department, which continues to be comprised solely of part-time, 1,000-plus firefighters, none of whom participate in the IMRF.

¶ 10 In 2013, Westmont became involved in an unrelated proceeding concerning the status of full-time administrators, not firefighters, within the fire department. Near the conclusion of that proceeding, apparently due to the scrutiny placed on Westmont's fire department, the IMRF's general counsel became aware that Westmont's part-time, 1,000-plus firefighters were not covered by *any* pension plan, either a local fund or the IMRF. Westmont contended that it had not formed a local pension fund because sections 4-101 and 4-103 of the Pension Code required such a fund to be created only if the municipality had a population of between 5,000 and 500,000 (which it did) *and* had at least one full-time paid firefighter (which it did not). 40 ILCS 5/4-101, 4-103 (West 2014). Likewise, by virtue of its department's Group IV status, Westmont did not participate in the IMRF. In the IMRF's view, this coverage gap seemed particularly glaring because its manual specifies that *Group III* departments (*i.e.*, those in municipalities with populations of *less* than 5,000 and that do not have local pension funds) must enroll their part-time, 1,000-plus firefighters in the IMRF. Hence, if small municipalities with Group III departments, with fewer than 5,000 residents, are expected to pay for IMRF

coverage for their part-time, 1,000-plus firefighters when they do not provide local funds, there would be no reason to exempt larger municipalities with Group IV departments, such as Westmont, from providing IMRF coverage for their part-time, 1,000-plus firefighters when they do not provide local funds.

¶ 11 Between March and August 2013, due to this gap in coverage, the IMRF Staff unilaterally amended the IMRF manual to create a new group, Group VI. Group VI covered municipalities, like Westmont, that have populations of 5,000 or more but do not have their own local pension funds because they do not employ at least one full-time firefighter and therefore are not required to have their own funds. These municipalities must enroll their part-time, 1,000-plus firefighters in the IMRF.

¶ 12 The Staff sent Westmont at least two letters explaining the reclassification. One of these letters, dated March 18, 2013, stated that Westmont's fire department did not fit into the manual's Group IV classification, because Westmont did not *both* cross the 5,000 population threshold *and* provide its firefighters with a local pension fund. (Again, in actuality, the manual states that a Group IV department's municipality has crossed the 5,000 population threshold *and/or* provides its firefighters with a local pension fund.) The second letter, dated August 28, 2013, did not mention the manual and instead explained that the Pension Code required Westmont to enroll its part-time, 1,000-plus firefighters in the IMRF.

¶ 13 In October 2013, Westmont appealed the IMRF Staff's reclassification to the Board. Westmont was not happy with the reclassification, because it would incur "high" corresponding costs for the covered firefighters' IMRF participation and it had not budgeted or planned for those costs. It estimated that the costs would be in the multimillion-dollar range. Westmont presented Searl's affidavit, in which he attested, as set forth above, that, as early as 1992, he asked Anderson whether Westmont's part-time, 1,000-plus firefighters needed to participate in the IMRF, particularly because they remained uncovered by a local pension fund. Anderson informed him that, as a Group IV department, Westmont's firefighters *could not* participate in the IMRF. Anderson further informed him that the groups set forth in the manual could not change, and he relied on this representation in structuring the fire department.

¶ 14 At the hearing, in its opening remarks, Westmont explained, without later submitting supporting evidence, that it was not that it wished for its part-time, 1,000-plus firefighters to go without pensions; rather, it urged, most of its force consisted of firefighters from neighboring municipalities who had likely secured pensions through those municipalities. After the opening remarks, Searl testified consistently with his affidavit. The Board did not challenge Searl's recollection of his 1992 conversation with Anderson. Instead, it asked Searl why he did not obtain written confirmation of Anderson's answer, preferably from an attorney. Searl answered that he *had* requested written confirmation but that Anderson told him that the IMRF manual was sufficient. Westmont's closing argument largely concerned estoppel and its reliance on Anderson's 1992 oral assurances. The Board denied Westmont's appeal. The Board acknowledged without discussion that Group IV included fire departments from municipalities that had crossed the 5,000 population threshold *and/or* had formed local pension funds for their firefighters. It stated, however, that allowing Westmont's department to remain in Group IV conflicted with the Pension Code's requirement that a municipality such as Westmont, which does not employ at least one full-time firefighter, and therefore has not provided a local pension fund for its firefighters (40 ILCS 5/4-101, 4-103 (West 2014)), must enroll its part-time, 1,000-plus firefighters in the IMRF (40 ILCS 5/7-109, 7-137(a), (e) (West

2014)). The circuit court affirmed, and this appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16      On appeal, Westmont argues that: (1) its fire department fits into the IMRF manual's Group IV classification and therefore it is not required to enroll its part-time, 1,000-plus firefighters in the IMRF; (2) the IMRF is estopped from removing the department from Group IV status, because, in 1992, when presented with this exact question, Anderson orally assured Searl that the department would remain in Group IV and that Westmont did not have to enroll its part-time, 1,000-plus firefighters in the IMRF; and (3) allowing the department to remain in Group IV and Westmont to abstain from enrolling its part-time, 1,000-plus firefighters in the IMRF, even though it has not established its own local pension fund, does not violate the Pension Code. For the reasons that follow, we agree that Westmont's fire department fits into the IMRF manual's description of Group IV. However, allowing the department to remain in Group IV violates the Pension Code, and, because the doctrine of estoppel cannot be invoked where the status quo violates statutory requirements, we must reject Westmont's estoppel argument.

¶ 17      Both Westmont's argument concerning how to read the IMRF manual and its argument concerning statutory compliance involve questions of construction and deference to the Board. The same rules of construction apply to administrative rules and regulations as are applied to statutes. *Hetzer v. State Police Merit Board*, 49 Ill. App. 3d 1045, 1047 (1977). When construing a statute, the primary objective is to give effect to the intent of the legislature. *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15. The language of the statute is the best indicator of legislative intent, and the language should be given its plain and ordinary meaning whenever possible. *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 552 (2009). Each word, clause, and sentence should be given effect so as not to be rendered superfluous. *Chicago Teachers Union*, 2012 IL 112566, ¶ 15. Generally, we afford substantial deference to an agency's construction. *Chamberlain v. Civil Service Comm'n*, 2014 IL App (2d) 121251, ¶ 24. However, where an agency drastically departs from its own prior practice, an argument may be made that the reliability of the agency's construction has been compromised such that it should be entitled to less deference. See, *e.g.*, *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 228 (1989) (heightened degree of appellate scrutiny is appropriate where there is a drastic departure from past Commission practice); *cf. Peoples Gas, Light & Coke Co. v. Illinois Commerce Comm'n*, 175 Ill. App. 3d 39, 51 (1988) (stating, in the context of a Commission case, that an agency is not bound by its prior handling of similar, or even the same, issues). Moreover, where the language of the statute is completely clear and unambiguous, a court may interpret the statute *de novo*, without resort to other aids of construction and without deference to the agency's decision. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 239 (1996) (declining to defer to the agency's interpretation where the statute was not ambiguous). Additionally, we keep in mind that, "[w]hen an appeal is taken to the appellate court following entry of judgment by the circuit court on administrative review, it is the decision of the administrative agency, not the judgment of the circuit court, which is under consideration." *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010).

- 6 -

¶ 18                                                          A. IMRF Manual

¶ 19          Westmont first argues that a plain reading of the IMRF manual establishes that its fire department belongs in Group IV and that it therefore is not required to enroll its firefighters in the IMRF. Westmont appears to draw upon the explanation in the IMRF Staff's March 18, 2013, letter as to why its department does not belong in Group IV. Again, that explanation stated that, unlike Westmont's department, Group IV departments are in municipalities that have crossed the 5,000 population threshold *and* are required by law to have formed local pension funds. For the reasons that follow, we agree that, in March 2013, IMRF Staff did not provide Westmont with the correct explanation of why Westmont's part-time, 1,000-plus firefighters must participate in the IMRF and that, indeed, the IMRF manual's description of Group IV departments includes those such as Westmont's.

¶ 20          Here, we find the plain language of the manual to be clear and unambiguous. Therefore, even if deference to the IMRF's interpretation in the (rather unofficial) March 2013 letter *were* warranted, we would not be swayed. Again, the manual defines Group IV fire departments as those in municipalities that "now have a population of 5,000 or more, and/*or* have formed a fire pension fund." (Emphasis added.) Reading the manual as the IMRF Staff set forth in the letter, *i.e.*, that participation in the IMRF is not required for firefighters in municipalities that "now have a population of 5,000 or more *and* have formed a fire pension fund," renders the word "or" superfluous. It is incorrect to ignore the word "or." See, *e.g.*, *Chicago Teachers Union*, 2012 IL 112566, ¶ 15.

¶ 21          "As used in its ordinary sense, the word 'or' marks an alternative indicating the various members of the sentence which it connects are to be taken separately." *People v. Frieberg*, 147 Ill. 2d 326, 349 (1992). As such, the IMRF manual defines Group IV fire departments as those in municipalities that fit any *one* of the following patterns: (1) *have* crossed the 5,000 population threshold but have *not* formed a local pension fund; (2) have *not* crossed the 5,000 population threshold but *have* formed a local pension fund; or (3) have both crossed the 5,000 population threshold *and* formed a local pension fund. Westmont fits into the first pattern. Thus, a plain reading of the IMRF manual establishes that Westmont's department fits in Group IV.

¶ 22          However, we now must consider whether this reading conflicts with the Pension Code and, if it does not, whether the IMRF is estopped from reclassifying the department as a Group VI department.


¶ 23                                        B. Estoppel and Statutory Compliance

¶ 24          Westmont next argues that the IMRF Staff was estopped from removing its fire department's Group IV status. Westmont contends that, in 1992, it expressly asked Anderson whether it was required to enroll in the IMRF its part-time, 1,000-plus firefighters when it did not have a local pension fund. Anderson answered in the negative, and Westmont structured its fire force accordingly. Indeed, an agency's custom and practice in setting its rules *may* prohibit it from changing them. See *Holland v. Quinn*, 67 Ill. App. 3d 571, 574 (1978). For example, in *American Oil Co. v. Mahin*, 49 Ill. 2d 199, 204-06 (1971), the supreme court held that the Department of Revenue could not revise its own rule, where that rule had been consistently and uniformly applied for a substantial period of time and was consistent with the governing statute.

¶ 25　　　However, estoppel does not apply where the agency regulation upon which the plaintiff relies conflicts with a statute. *Vestrup v. Du Page County Election Comm'n*, 335 Ill. App. 3d 156, 166-67 (2002) (refusing to apply the doctrine of estoppel where it would prevent the enforcement of law). An agency's mistaken interpretation of a statute cannot preclude a court from enforcing that statute. *Id*. Westmont concedes this principle. As such, first, we must decide whether allowing Westmont's fire department to remain in Group IV under the IMRF manual conflicts with the Pension Code's requirement that part-time, 1,000-plus firefighters be enrolled in the IMRF when the employing municipality does not provide a local pension fund. If we find that it does, we need not consider Westmont's estoppel argument any further.

¶ 26　　　In its reply brief, Westmont implicitly concedes several points: (1) *per statute*, part-time, 1,000-plus firefighters *must* participate in the IMRF (40 ILCS 5/7-137(a)(1), (e) (West 2014)); (2) section 7-109(2)(b) of the Pension Code specifically excludes firefighters in a "municipality in which a [local] pension fund *is required by law* to be established for \*\*\* firemen" (emphasis added) (40 ILCS 5/7-109(2)(b) (West 2014)); and (3) Westmont is *not* "required by law" to establish a local pension fund, because it does not employ at least one full-time firefighter (40 ILCS 5/4-101, 4-103(1) (West 2014)), and, therefore, it does not fall under the section 7-109(2)(b) exclusion.[1]

¶ 27　　　Westmont argues that, even though its part-time, 1,000-plus firefighters do *not* fall under the *statutory* exception, under section 7-109(2)(b), to IMRF participation, they *do* fall under the *regulatory* exception, under the IMRF manual. We reject this argument.

¶ 28　　　We will not make this issue more difficult than it is. Section 7-137(a)(1) clearly states that those falling under the umbrella of IMRF participation can be excluded *only* as expressly provided by *statute*: "The persons described in this paragraph (a) *shall* be included within and be subject to this Article and eligible to benefits from this fund \*\*\* (1) [*e*]*xcept as to the employees specifically excluded under* [*article VII*] \*\*\*." (Emphases added.) 40 ILCS 5/7-137(a)(1) (West 2014). Even if a fair question could be raised as to the *Board's* authority to exclude certain groups from the *legislature's* mandate, and we do not believe one could, *here* the statute expressly states that any exclusion *must* be set forth by statute ("except as to the employees *specifically excluded* under [article VII]" (emphasis added) (*id.*)). As such, all exclusions to IMRF participation must be set forth in the statute. The statute does not allow for the manual to provide an independent "second" exclusion. Thus, the statute does not allow for the manual to exclude Westmont's part-time, 1,000-plus firefighters.

---

[1] In its *opening* brief, Westmont argued that section 7-109(2)(b) *did* exclude its part-time, 1,000-plus firefighters from participation in the IMRF. 40 ILCS 5/7-109(2)(b) (West 2014). Again, section 7-109(2)(b) excludes firefighters when the municipality is "required by law" to form a local pension fund. *Id*. However, section 4-103 plainly states that a municipality such as Westmont, which is between 5,000 and 500,000 in population, is required to form a local pension fund *if* it employs at least one full-time firefighter. 40 ILCS 5/4-103(1) (West 2014). Westmont does not. Therefore, it is not required by law to form a local pension fund, and its part-time, 1,000-plus firefighters are not excluded under section 7-109(2)(b) from participation in the IMRF. Westmont's citation to *Holmes v. Illinois Municipal Retirement Fund*, 185 Ill. App. 3d 282, 284 (1989), is off-point. That case concerned an individual policeman's eligibility for participation in the IMRF where his employing municipality had rejected him from its local pension fund, whereas the instant case involves the coverage of an entire class of firefighters (part-time, 1,000-plus) and a determination of whether those firefighters belong in a local pension fund or the IMRF.

¶ 29    In sum, Westmont's entire appeal seems to come down to whether the IMRF can, perhaps unintentionally, create and be bound by a nonstatutory exclusion to the statutory requirement that a municipality must enroll its part-time, 1,000-plus firefighters in the IMRF when the municipality has not created a local pension fund. Because the IMRF cannot, the manual's Group IV exclusion, as applied to Westmont, cannot have the force of law. Westmont cannot rely on the doctrine of estoppel to continue to receive an exemption that conflicts with the statute, and, therefore, we will not consider further Westmont's estoppel argument.

¶ 30    We do empathize to some degree with Westmont, in that, as early as 1992, it sought oral assurances from the IMRF that, as a municipality with a Group IV fire department, it would not have to enroll its part-time, 1,000-plus firefighters in the IMRF and that, because it did not employ at least one full-time firefighter, it would not have to provide its firefighters with a local pension fund. As the IMRF conceded at oral argument, the manual contained an unfortunate mistake. Still, it seems to us that a more apt characterization of the 1992 conversation is that, as a result, the IMRF erroneously and temporarily allowed Westmont's coverage gap to go unnoticed. At this point, even if the IMRF supported Westmont's position under the manual, this court would still interpret the statute to require Westmont to provide IMRF coverage for its part-time, 1,000-plus firefighters. Westmont argued at the hearing before the Board that, most likely, its part-time firefighters had already secured pensions from different employing municipalities and were only picking up extra hours with Westmont. However, in a sense, the legislature has already hedged against Westmont's stated "most likely" scenario–*i.e.*, that part-time employees would have secured pensions through employment elsewhere–by creating the 1,000-hour cut-off. Westmont cannot be exempted from the statute's requirements.

¶ 31                                III. CONCLUSION
¶ 32    For the aforementioned reasons, we affirm the judgments of the Board and the circuit court.

¶ 33    Affirmed.