# Illinois Official Reports

## Appellate Court

---

### *O'Connell v. County of Cook*, 2021 IL App (1st) 201031

---

| | |
|---|---|
| Appellate Court Caption | JOHN O'CONNELL, Plaintiff-Appellant, v. THE COUNTY OF COOK and THE BOARD OF TRUSTEES OF THE COUNTY EMPLOYEES' AND OFFICERS' ANNUITY AND BENEFIT FUND OF COOK COUNTY, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>No. 1-20-1031 |
| Filed<br>Rehearing denied | June 30, 2021<br>July 22, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 20-CH-288; the Hon. Neil H. Cohen, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael L. Shakman, Mary Eileen Cunniff Wells, and Rachel Ellen Simon, of Miller Shakman Levine & Feldman LLP, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein, Mona E. Lawton, and Colleen M. Harvey, Assistant State's Attorneys, of counsel), for appellee County of Cook.<br><br>Vincent D. Pinelli and Sarah A. Boeckman, of Burke Burns & Pinelli, Ltd., of Chicago, for other appellee. |

| Panel | PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion.<br>Justices Hoffman and Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1                                                         BACKGROUND

¶ 2         John O'Connell, a longtime Cook County employee, developed multiple sclerosis and obtained ordinary disability benefits (disability benefits)[1] from defendant-appellant Board of Trustees of the County Employees' and Officers' Annuity and Benefit Fund of Cook County (pension board). While he was receiving disability benefits, Cook County terminated him from employment because he was unable to provide a physician's certification providing a return-to-work date. Put simply, Cook County fired him solely because he was unable to return to work because of his disabilities from multiple sclerosis. Shortly thereafter, the pension board terminated his disability benefits, and the county stopped making contributions on his behalf to the County Employees' and Officers' Annuity and Benefit Fund (pension fund). O'Connell filed a multicount complaint against both the county and the pension board, seeking reinstatement of his disability benefits and the continuation of contributions to the pension fund under various theories of relief. The circuit court dismissed the entire complaint with prejudice. O'Connell appeals only the dismissal of counts I, III, and V of his complaint. We reverse.

¶ 3                                                           FACTS

¶ 4         The following recitation of facts is taken from the pleadings and exhibits of record. In 1999, O'Connell began working for Cook County and became a participant in the pension fund. The county deducted a portion of O'Connell's salary each month and transmitted those monies to the pension fund as his employee contribution. O'Connell was diagnosed with multiple sclerosis in 2001 but was still able to work, with accommodations, until 2016. In January 2017, he applied to the pension board for disability benefits, and the board granted his application. As required by section 9-158 of the Code (40 ILCS 5/9-158 (West 2018)), he reapplied for those benefits from time to time by submitting proof of his continued disability, and the pension board approved those applications. The last time this occurred was May 2, 2019, when the pension board approved his disability benefits for a period ending November 30, 2019. During this period, the county itself also made contributions to the pension fund on O'Connell's behalf as required by sections 9-157 and 9-181 of the Code (*id.* §§ 9-157, 9-181).

¶ 5         On May 16, 2019, Cook County sent O'Connell a letter requiring him to submit medical documentation with an expected return-to-work date by May 29, 2019. If he failed to do so,

[1]The Illinois Pension Code (Code) distinguishes between "duty" disability benefits payable to Cook County employees who are injured in the course of their employment (40 ILCS 5/9-156 (West 2018)) and "ordinary" disability benefits payable to those, such as O'Connell, whose disability is not work-related (*id.* § 9-157). For ease of expression, this opinion will refer to O'Connell's benefits simply as "disability benefits."

the letter warned, he would be fired. The pension board then told him that, if he were fired, his disability benefits would stop. O'Connell responded, stating that he was still medically unable to return to work.

¶ 6 The county terminated O'Connell from employment on July 1, 2019. The termination letter left no doubt as to the reason. It stated: "The Bureau of Human Resources has not received medical documentation indicating a projected return to work date. Nor has the Bureau of Human Resources received an authorization returning you to work with or without a reasonable accommodation. You have been separated from your position effective July 1, 2019." At that point, the county also stopped making contributions on his behalf to the pension fund, as it had been doing all along during his disability.

¶ 7 The pension board then terminated O'Connell's disability benefits without providing any hearing, on the stated basis that he was no longer a county employee. Because the county terminated O'Connell's employment before he reached the end of his disability benefit eligibility period, he also lost his ability to keep earning sufficient credits to maximize his retirement benefits by invoking a "credit purchase option" or "early annuity option" as provided by sections 9-174 and 9-160 of the Code (*id.* §§ 9-174, 9-160), respectively, for individuals whose disability benefit eligibility period had expired. O'Connell demanded that the pension board continue his disability benefits, but the pension board did not respond.

¶ 8 On January 9, 2020, O'Connell filed a five-count complaint against the county and the pension board. The three counts relevant to this appeal are counts I, III, and V. Count I sought a declaratory judgment that O'Connell was entitled to continued disability benefits, on the theory that an employee who begins receiving disability benefit payments while still employed may continue receiving those benefits even if he is terminated from employment, if he is still disabled. It also alleged that, because of O'Connell's termination from employment, the county improperly stopped making contributions to the pension fund on his behalf. The prayer for relief in count I explicitly sought a declaration that O'Connell's disability benefits were improperly terminated, and it requested an order requiring the pension fund to pay him retroactive disability benefit payments. The prayer for relief did not, however, explicitly request retroactive reinstatement of the county's contributions. However, one remedy necessarily follows from the other. Reading the allegations in count I as a whole and in context, it is clear that O'Connell was seeking relief in that count for retroactive reinstatement of the county's contributions, both on a declaratory and injunctive basis. Therefore, we deem such relief as encompassed by the portion of the prayer for relief that sought "such further relief as the Court deems just and proper." Count III sought relief in *mandamus* on the same theory but added a specific request for relief against the county to retroactively "reinstate all contributions" to the pension fund. Count V was pleaded only against the pension board. It alleged a violation of the due process clause of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) (as applied to the States) and federal civil rights laws, based on the pension board's termination of O'Connell's disability benefit payments without a notice or hearing.

¶ 9 Both defendants filed a combined motion to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2018)). After briefing, the circuit court granted the motions and dismissed the complaint with prejudice.

¶ 10 The circuit court's memorandum and order first addressed Cook County's motion to dismiss. The court dismissed count I as to Cook County pursuant to section 2-615. *Id.* § 2-615.

That count sought a declaration against Cook County that O'Connell was entitled to receive disability benefits, and as we have explained above, it also sought a declaration that he was entitled to county contributions during his period of disability. The circuit court found that Cook County had no authority to determine pension eligibility or to distribute pensions. In dismissing count I as to the county, the circuit court did not address the portion of count I relating to county contributions. The court dismissed count III pursuant to section 2-619. *Id.* § 2-619. It reasoned that O'Connell had no "protectable interest under either statute or common law which was injured by the termination of his employment and the cessation of the County's contributions to the Pension Fund." Therefore, he lacked standing to seek *mandamus* relief. It also dismissed count III pursuant to section 2-615 because O'Connell failed to allege facts demonstrating he had a right to continued employment by Cook County. Count V was not pleaded against Cook County.

¶ 11 As to the pension board, the circuit court dismissed counts I and III pursuant to section 2-619 on the basis that a former employee was not entitled to receive disability benefits under the Code. It also dismissed counts I and III pursuant to section 2-615 because, based on its interpretation of the Code, O'Connell had no legal tangible interest in continuing disability payments. The court dismissed count V pursuant to section 2-615 because, if O'Connell had no protectable interest in continued employment with the county, he had no procedural due process rights that the board could have violated. The court dismissed these counts with prejudice as to both defendants. It also dismissed counts II and IV with prejudice as to both defendants. This appeal followed.

¶ 12                                                          ANALYSIS

¶ 13 On appeal, O'Connell contends that the circuit court erred in dismissing counts I, III, and V. He offers no arguments regarding the dismissal of counts II and IV.

¶ 14 Section 2-619.1 of the Code of Civil Procedure (*id.* § 2-619.1) permits a defendant to file a combined motion to dismiss pursuant to sections 2-615 and 2-619 of that Code. "A section 2-615 motion to dismiss [citation] challenges the legal sufficiency of a complaint based on defects apparent on its face." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). "In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts," and we "construe the allegations in the complaint in the light most favorable to the plaintiff." *Id.* (citing *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 96-97 (2004)). Illinois is a fact-pleading jurisdiction, and a plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action. *Id.* at 429-30. However, "a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Id.* at 429. We review an order granting or denying a section 2-615 motion *de novo*. *Id.*

¶ 15 We review denial of a section 2-619 motion to dismiss *de novo. DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). Section 2-619(a)(9) allows dismissal if "the claim asserted against defendant is barred by other affirmative matter." 735 ILCS 5/2-619(a)(9) (West 2018). When ruling on a motion to dismiss under section 2-619, a court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24. As a result, a court should

- 4 -

not grant a motion to dismiss unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Id.*

¶ 16 Our analysis begins with the operative statutes. Article 9 of the Code (40 ILCS 5/9-101 *et seq.* (West 2018)) establishes a pension system for Cook County employees. Several sections in article 9 of the Code are relevant to this appeal. Section 9-108 of the Code defines "employee" as "[a]ny employee of the county employed in any position in the classified civil service of the county." *Id.* § 9-108.

¶ 17 Section 9-157 of the Code is the key section regarding "ordinary" disability benefits such as those that O'Connell had received. The section is quite lengthy, so we only set out the clauses relevant to this appeal. The main provision regarding eligibility for disability benefits states:

> "An employee *** regardless of age on or after January 1, 1987, who becomes disabled after becoming a contributor to the fund as the result of any cause other than injury incurred in the performance of an act of duty is entitled to ordinary disability benefit during such disability, after the first 30 days thereof." *Id.* § 9-157.

The disability benefit is "50% of the employee's salary at the date of disability." *Id.*

¶ 18 Section 9-157 elsewhere refers to an individual as an "employee" even though that person has been receiving ordinary disability payments for some time and is therefore *no longer working* as a county employee. For example, in the text listing five triggering events that require termination of disability benefits, the person receiving benefits is referred to as an employee. This provision states that a disability benefit

> "shall cease when the first of the following dates shall occur and *the employee*, if still disabled, shall thereafter be entitled to such annuity as is otherwise provided in this Article:
>
> (a) the date disability ceases.
>
> (b) the date the disabled *employee* attains age 65 for disability commencing prior to January 1, 1979.
>
> (c) the date the disabled *employee* attains 65 for disability commencing prior to attainment of age 60 in the service and after January 1, 1979.
>
> (d) the date the disabled *employee* attains the age of 70 for disability commencing after attainment of age 60 in the service and after January 1, 1979.
>
> (e) the date the payments of the benefit shall exceed in the aggregate, throughout the *employee's* service, a period equal to ¼ of the total service rendered prior to the date of disability but in no event more than 5 years. In computing such total service any period during which the *employee* received ordinary disability benefit and any period of absence from duty other than paid vacation shall be excluded." (Emphases added.) *Id.*

¶ 19 Section 9-159 of the Code also lists three additional triggering events, in addition to the five events listed in section 9-157, that require that disability benefits be terminated. They are, in summary: (a) refusal to submit to a medical examination ordered by the pension board, (b) working for a tax-supported employer, and (c) receipt of workers' compensation benefits. *Id.* § 9-159.

¶ 20 Section 9-157(e) delineates a "years of service credits" option and limits the length of time an employee may receive ordinary disability benefits based on the length of time the employee

worked in regular service. It is undisputed that, at the time O'Connell was terminated, he was entitled to receive disability benefits until August 2021, based on his years of service credits, which would have been about 4½ years after he left active service and began receiving disability benefits. As noted above, the pension board's decision to stop his disability payments at the time of his termination on July 1, 2019, left a two-year gap between his termination and the exhaustion of his disability benefit period.

¶ 21 Other clauses in section 9-157 address Cook County's obligation to continue making certain payments to the pension fund on behalf of disabled employees. These payments include a certain amount made through a payroll deduction from nondisabled employees' salaries (the employee contribution) and an additional amount (the employer contribution), which Cook County makes from its own funds. O'Connell relies on these clauses as the basis for his claims against Cook County. The clauses provide that

> "[i]nstead of all amounts ordinarily contributed by an employee *** the county shall contribute sums equal to such amounts for any period during which the employee receives ordinary disability and such is deemed for annuity and refund purposes *** contributed by him. The county shall also contribute ½ of 1% salary deductions required as a contribution from the employee under Section 9-133." *Id.* § 9-157.

Similarly, section 9-181 of the Code requires the county to "contribute all amounts ordinarily contributed by it for annuity purposes" for an employee receiving ordinary disability benefits "as though he were in active discharge of his duties during such period of disability." *Id.* § 9-181.

¶ 22 Two other sections of article 9 establish mechanisms for disabled employees to convert their disability pensions into retirement pensions once their disability eligibility period has expired. Section 9-160 of the Code, the "early annuity option," provides that

> "[a]n employee whose disability continues after he has received ordinary disability benefit *for the maximum period* *** prescribed by this Article, and who withdraws before age 60 while still so disabled, is entitled to receive the annuity provided from the total sum accumulated to his credit from employee contributions and county contributions to be computed as of his age on the date of withdrawal." (Emphasis added.) *Id.* § 9-160.

Section 9-174, the "credit purchase option," also provides that disabled employees whose credit for ordinary benefit purposes has expired and who continue to be disabled have the right to continue contributing to the pension fund at the "current contribution rate" for a period not to exceed 12 months and to receive annuity credit for those periods so paid. *Id.* § 9-174. These sections illustrate that, under most circumstances, a permanently disabled employee may enjoy an uninterrupted flow of benefits from the time of disability until conversion to a disability pension or the employee's death. As noted above, the board halted O'Connell's benefits when the county terminated him, before his disability benefit period expired and thus before he was able to qualify for either the early annuity option or credit purchase option.

¶ 23 This case presents a question of statutory interpretation. Two principles guide us. First, we follow the cardinal rule of statutory construction, which is to ascertain and give effect to the legislature's intent, and the plain language of the statute is the best indication of that intent. *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 37-38 (2009). "The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning." *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 552 (2009).

"The statute should be evaluated as a whole, with each provision construed in connection with every other section." *Id.* If the statutory language at issue is clear and unambiguous, a reviewing court must interpret the statute according to its terms without resorting to aids of statutory construction. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995). Second, when there " 'is any question as to legislative intent and the clarity of the language of a pension statute, it must be liberally construed in favor of the rights of the pensioner.' " *Kanerva v. Weems*, 2014 IL 115811, ¶ 36 (quoting *Prazen v. Shoop*, 2013 IL 115035, ¶ 39); accord *Carmichael v. Laborers' & Retirement Board Employees' Annuity & Benefit Fund*, 2018 IL 122793, ¶ 24.

¶ 24        The parties' arguments center on the temporal meaning of the word "employee" in section 9-157 and "employed" in section 9-108. O'Connell contends that section 9-157 does not require that the "employee *** who becomes disabled" continue to be an employee to receive disability benefits as long as the employee began receiving those benefits when he was an active employee. The defendants disagree, arguing that, under its common and ordinary meaning, the term "employed" plainly refers only to nonterminated employees. We disagree with the defendants. Applying the canons of liberal construction and the beneficial nature of pension laws, we find that the term "employed" is broad enough to encompass persons such as O'Connell who began receiving disability benefits when they were actively working. Nothing in the operative language suggests that the disabled employee must continue to be employed to remain eligible for disability benefits or for the county to be required to continue making contributions.

¶ 25        Even if we were to assume the terms "employed" or "employee" are ambiguous, the rules of statutory interpretation lead us to the same result.

¶ 26        We first examine article 9's specific enumeration of eight events that trigger termination of disability benefits. Since O'Connell's termination is not one of the eight listed triggering events under the Code, we may presume that the legislature did not intend to include termination as a triggering event under some other guise. When determining whether a listing in a statute is exclusive, courts use the rule of statutory construction known as *expressio unius est exclusio alterius*. The rule "is based on logic and common sense. It expresses the learning of common experience that when people say one thing they do not mean something else. The maxim is closely related to the plain language rule in that it emphasizes the statutory language as it is written." *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 152 (1997) (citing 2A Norman J. Singer, Statutes and Statutory Construction §§ 47.24, 47.25, at 228, 234 (5th ed. 1992)). Simply put, "[w]here a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions, despite the lack of any negative words of limitation." *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 442 (1992) (citing *Department of Corrections v. Illinois Civil Service Comm'n*, 187 Ill. App. 3d 304, 310 (1989)). Applying this rule supports O'Connell's position.

¶ 27        It is also axiomatic that courts must construe statutes to avoid absurd results. *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 70. The purpose of the Illinois pension laws is beneficial. *Kozak v. Retirement Board of Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 217 (1983) (citing *Colton v. Board of Trustees of the Firemen's Pension Fund*, 287 Ill. 56, 61 (1919)). The provisions cited above demonstrate a legislative intent to provide at least several years of benefits to disabled employees to ensure they have some income during their disability and to continue those benefits without a gap onwards into their retirement years, if need be.

Under defendants' interpretation, the beneficial purposes of the disability provisions of article 9 would be thwarted. The county could simply fire severely disabled employees even after a brief period of disability, thus saving the cost of its required contributions to the pension fund, and the pension board, in turn, would be able to terminate the employees' disability benefits. We therefore find that defendants' interpretation, that disability benefits end when an employee is terminated, leads inexorably to an absurd result and would undermine the beneficial purpose of the pension laws.

¶ 28 Our reading of the pertinent statutory provisions is also supported by the doctrine of *noscitur a sociis* ("a word is known by its companions"). As explained above, we do not find the statute ambiguous. But even if it were, this tool allows us to ascertain the meaning of an ambiguous statute by relating them to words or phrases associated with them in the statutory context. *Puritan Finance Corp. v. Bechstein Construction Corp.*, 2012 IL App (1st) 112261, ¶ 13. Article 9 often uses the term "employee" to refer to an individual who is receiving disability benefits. For example, section 9-135.1 (40 ILCS 5/9-135.1 (West 2018)) refers to a death benefit payable to "an employee in service or while receiving a retirement annuity." Section 9-161 (*id.* § 9-161) explains the calculation of annuities for an "employee who has withdrawn from service" then reenters service.

¶ 29 We conclude that, under the Code, O'Connell was entitled to disability benefits and continued county contributions to the pension fund because he was employed at the time of his application for disability benefits. We further find that his termination was not a triggering event causing the cessation of his disability benefits and county contributions to the pension fund. We now examine the circuit court's disposition of the various counts of the complaint in light of those findings. Only counts I, III, and V are at issue in this appeal. We again note that, since this appeal comes to us on dismissal pursuant to sections 2-615 and 2-619, we construe the allegations in the complaint as true.

¶ 30 The circuit court's dismissal of those counts was based entirely on its determination that O'Connell was no longer eligible for disability benefits and county contributions to the pension fund after the county terminated him. However, while the county may choose to terminate an employee who validly receives ordinary disability benefits, the pension board may not terminate the ordinary disability benefits solely because of that termination from employment, and the county may not refuse to make the required contributions to the pension fund in that instance. O'Connell seeks relief against the pension board for ordinary disability payments that would have been paid after his termination, relief against the county for contributions it should have made to the pension fund during the same period, and relief in that the payments and contributions continue according to the Code.

¶ 31 The elements of a declaratory judgment action are " '(1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests.' " *The Carle Foundation v. Cunningham Township*, 2017 IL 120427, ¶ 26 (quoting *Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003)). Based on our interpretation, O'Connell has a tangible pecuniary interest in his disability benefits and county contributions to the pension fund. Accordingly, the circuit court should not have dismissed O'Connell's declaratory judgment action.

¶ 32 Count III sought relief in the form of *mandamus* against both defendants. A valid complaint for *mandamus* "must allege facts which establish a clear right to the relief requested, a clear duty of the respondent to act, and clear authority in the respondent to comply with the writ."

*Noyola v. Board of Education of the City of Chicago*, 179 Ill. 2d 121, 133 (1997) (citing *Dennis E. v. O'Malley*, 256 Ill. App. 3d 334, 340-41 (1993)). Again, based on our interpretation of the Code, we find that the circuit court erred in dismissing count III. Following O'Connell's termination, each defendant had particular duties with respect to him. The pension board had a clear duty to make disability benefit payments, and the county had a clear duty to make contributions to the pension fund on his behalf. In particular, we note that, under section 9-160, the county was required to pay contributions toward O'Connell's early annuity option "for the maximum time prescribed by this Article," which in O'Connell's case was about 4½ years—*not* merely until the county terminated him from employment. See *supra* ¶ 20.

¶ 33    For the same reason, the circuit court should not have dismissed count III pursuant to section 2-619 on the basis of lack of standing. Standing is "some injury in fact to a legally recognized interest." *Glazewski v. Coronet Insurance Co.*, 108 Ill. 2d 243, 254 (1985). The claimed injury must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely to be prevented or redressed by the grant of the requested relief. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492-93 (1988). Since O'Connell had the right to continuation of his disability benefits and county contributions to the pension fund after his termination from employment, and the relief in count III would have made him whole for his losses, he had standing to bring his claim.

¶ 34    The circuit court dismissed count V, a due process claim against the board only, on the basis that O'Connell had no protectable right to a continuation of his disability benefits. However, because he did have such a protectable right, count V stated a valid cause of action for violation of his due process rights, and we reverse the dismissal of that count, as well. Taking the allegations of the complaint before us as true, we find that the circuit court erred in dismissing count V because that count stated a valid cause of action and was otherwise sufficient to survive a motion to dismiss. As this court explained in *Kosakowski v. Board of Trustees of the City of Calumet City Police Pension Fund*, 389 Ill. App. 3d 381, 387 (2009):

> "The receipt of a disability pension is a property right which cannot be diminished without procedural due process. [Citation.] The essence of procedural due process is meaningful notice and a meaningful opportunity to be heard. [Citation.] In this case, the Board afforded the plaintiff neither. Without notice and without a hearing, the Board unilaterally attempted to modify the disability pension which it had previously awarded to the plaintiff. As a matter of due process, the Board should have provided the plaintiff with notice and an opportunity to be heard before modifying his pension." (Internal quotation marks omitted.)

¶ 35    This disposition renders it unnecessary for us to consider O'Connell's arguments that the Illinois Constitution's pension protection clause (Ill. Const. 1970, art. XIII, § 5) requires reversal. See *In re E.H.*, 224 Ill. 2d 172, 178 (2006) ("cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort").

¶ 36                                    CONCLUSION

¶ 37    Accordingly, we reverse the judgment of the circuit court of Cook County dismissing counts I, III, and V of the complaint and remand for further proceedings consistent with this opinion. Because O'Connell has presented no arguments on appeal regarding the dismissal of

counts II and IV, those counts remain dismissed pursuant to the circuit court's order.

¶ 38        Reversed and remanded.