2023 IL App (1st) 211202-U

FIFTH DIVISION
January 13, 2023

No. 1-21-1202

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ELSTON HARRIS and 15637 AVALON AVENUE INDUSTRIES, LLC, | ) ) ) | Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | No. 2019 CH 05520 |
| DHM INDUSTRIES, d/b/a DO HARD MONEY, 15637 AVALON INDUSTRIES, LLC, | ) ) ) | Honorable, Anna Demacopoulos, Judge Presiding. |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE CONNORS delivered the judgment of the court.
Justices Delort and Mitchell concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The circuit court erred when it granted defendants' motion to dismiss plaintiff's claims because there are questions of fact that preclude dismissal; reversed and remanded.

¶ 2        Plaintiff, Elston Harris, appeals from the circuit court's order that granted the motion

to dismiss his claims to "quiet title for violation of the Illinois Mortgage Foreclosure Law" and

breach of contract filed by defendants, DHM Industries a/k/a Do Hard Money (DHM) and 15637

Avalon Avenue Industries LLC (the LLC), pursuant to section 2-619 of the Illinois Code of Civil

Procedure (735 ILCS 5/2-619 (West 2022)).[1] On appeal, plaintiff contends that the circuit court erred when it granted defendants' motion to dismiss because the mortgage agreement for the property at issue violated the Illinois Mortgage Foreclosure Law (IMFL) (735 ILCS 5/15-1101 *et seq.* (West 2020)) and was invalid and unenforceable. He argues a court in Utah did not have jurisdiction to determine issues concerning the mortgage recorded against property in Illinois and he was not obligated to defend a lawsuit in Utah to determine ownership. For the following reasons, we reverse and remand.

¶ 3                                  I. BACKGROUND

¶ 4        This action involves agreements between DHM and plaintiff related to financing a rehabilitation project for property located at 15637 Avalon Avenue, South Holland, Illinois (property).

¶ 5                                   Complaint

¶ 6        In May 2019, plaintiff filed a complaint against defendants based on agreements he entered into with DHM related to the purchase and rehabilitation of the property. Plaintiff alleged that in 2016, he entered into an agreement with DHM to obtain financing to purchase and rehab the property in exchange for a mortgage placed on the property. DHM insisted that he form the LLC to purchase the property. Before the loan finalized, DHM required him to transfer ownership of the property to the LLC, which was formed solely for purposes of the purchase. Plaintiff was the president of the LLC.

¶ 7        Plaintiff attached to the complaint a promissory note (note) that he signed as manager of the LLC and that provided that the LLC promised to pay DHM the principle of $84,000. The note does not contain a complete date for the effective date. Plaintiff alleged that under another

---

[1] Plaintiff's complaint names 15637 Avalon Avenue Industries, LLC (the LLC) as both a plaintiff and a defendant. In this order, we will refer to the appellant, Harris, as the plaintiff and the LLC and DHM as defendants.

agreement entitled the "property improvement escrow agreement," the note was considered in default if he did not complete the rehabilitation project within 60 days. Plaintiff had difficulty completing the construction project within that time frame due to DHM's maintenance of the loan, which included DHM withholding one of the three payments and requiring him to pay $3,000 to $4,000 to supplement each payment. To prevent a foreclosure sale in Utah, DHM required plaintiff to pay DHM $1,888 per month. DHM then attempted to evict a tenant who was living at the property. It claimed a foreclosure sale had been approved when there was no record of it and paid the tenant $2,000 to move out. Plaintiff alleged that he filed documents with the Illinois Secretary of State naming an individual identified as Eddie Watkins as a registered agent for the LLC, after which DHM amended the filing and changed the registered agent. In November 2018, DHM requested a payoff amount of $135,000, which plaintiff did not accept. Thereafter, DHM used the Utah legal system to take control of the LLC and it became the *de facto* owner of the property.

¶ 8        Plaintiff alleged claims to "quiet title for violation of the Illinois Mortgage Foreclosure Law" (IMFL), breach of contract, fraud, and defamation *per se*. He alleged that DHM violated the IMFL in a number of ways and took possession of the property without complying with the IMFL. He attached to the complaint the note, the property improvement escrow agreement, and a document entitled "mortgage, security agreement, assignment of rents and leases and fixture filing (Illinois)" (mortgage). The parties to the property improvement escrow agreement, which was not signed, were the LLC and DHM. The parties to the mortgage were the LLC and DHM and plaintiff signed it as manager for the LLC.

¶ 9                    Defendants' Section 2-619 Motion to Dismiss

¶ 10   Defendants filed a motion to dismiss plaintiff's complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619) (West 2020)). Defendants asserted that the LLC acquired title to the property and the purchase of the property was funded by DHM. As part of the lending agreement, plaintiff pledged his membership interest in the LLC as collateral for the loan and personally guaranteed it. When the loan matured after five months, the LLC defaulted without making any payments and plaintiff failed to abide by the personal guaranty. To remedy the default, plaintiff's membership interest in the LLC was sold in a sale administered by a Salt Lake County, Utah constable and DHM was the successful bidder. Defendants asserted that section five of the "security agreement" allowed for the collateral, which was plaintiff's ownership interest in the LLC, to be sold at a public sale under the Utah Commercial Code.

¶ 11   Defendants contended that the court should dismiss plaintiff's complaint for two independent reasons: 1) the loan agreement and security agreement contained forum selection clauses for disputes arising under or relating to the loan documents as well as the issue of LLC's ownership to be adjudicated in Utah; and 2) a state court in Utah already determined who owned the membership interest in the LLC.

¶ 12   Defendants attached to the motion to dismiss documents entitled "security agreement" and "loan agreement." The parties to the security agreement were plaintiff and DHM, and plaintiff and DHM both signed it. Section six of the security agreement stated, in relevant part, that it "shall be construed and governed under the laws of the State of Utah, and jurisdiction for any disputes relating to this Agreement or the Note shall be in Utah State Courts sitting in Salt Lake County, Utah." The parties to the loan agreement were DHM and the LLC.

Plaintiff signed the loan agreement individually as personal guarantor and on behalf of the LLC.

Section 9.16 of the loan agreement stated:

> "Consent to Utah Jurisdiction and Exclusive Jurisdiction of Utah Courts.
> Borrower acknowledges that by execution and delivery of the Loan Documents
> Borrower has transacted business in the State of IL and Borrower voluntarily submit
> to, consent to, and waive any defense to the jurisdiction of courts located in the State
> of Utah as to all matters relating to or arising from the Loan Documents and/or the
> transactions contemplated thereby. EXCEPT AS EXPRESSLY AGREED IN
> WRITING BY LENDER, THE STATE AND FEDERAL COURTS LOCATED IN
> THE STATE OF UTAH SHALL HAVE SOLE AND EXCLUSIVE JURISDICTION
> OF ANY AND ALL CLAIMS, DISPUTES, AND CONTROVERSIES, ARISING
> UNDER OR RELATING TO THE LOAN DOCUMENTS AND/OR THE
> TRANSACTIONS CONTEMPLATED THEREBY. NO LAWSUIT,
> PROCEEDING, OR ANY OTHER ACTION RELATING TO OR ARISING
> UNDER THE LOAN DOCUMENTS AND/OR THE TRANSACTIONS
> CONTEMPLATED THEREBY MAY BE COMMENCED OR PROSECUTED IN
> ANY OTHER FORUM EXCEPT AS EXPRESSLY AGREED IN WRITING BY
> LENDER."

¶ 13      As for defendants' argument that the issue of the ownership of the LLC was already adjudicated in Utah, they asserted that a Utah court settled the issue in favor of DHM, and it would be improper to relitigate the issue in Cook County. Defendants attached to their motion to dismiss a two-page order entered by a judge in the third judicial district court in Salt Lake County, Utah. The order provided that the matter was before the court on a motion for partial

summary judgment filed by the plaintiffs in that case, who were DHM and the LLC. The order stated:

> "Pursuant to Rule 56(e), the Court considers the Plaintiffs' facts as undisputed for purposes of the Motion. These undisputed facts show that Plaintiff is entitled to judgment as a matter of law. More specifically, under the Security Agreement, Defendant Elston Harris pledged his ownership interests in the company 15637 Avalon Avenue Industries, LLC, as collateral for the loan. The Plaintiff, DHM Industries, Inc., as a secured creditor, was the successful bidder and purchaser at the public sale of the collateral conducted under Utah Code Ann. 70A-9a-610(3) by the Salt Lake County Constable on May 8, 2017."

The court also stated in the order that DHM was "the owner of the collateral, and the single member owner of 15637 Avalon Avenue Industries, LLC, its property and/or assets."

¶ 14    Defendants also attached to the motion to dismiss an "unconditional personal guaranty" signed by plaintiff, which provided that plaintiff unconditionally guaranteed the payment and performance of the LLC, the borrower, of all the obligations set forth in the loan documents. It stated that in addition to the loan documents, the performance by the guarantor is secured by the security agreement "under which Guarantor has pledged one hundred percent (100%) of Guarantor's membership interest in Borrower." DHM also attached the operating agreement for the LLC, which provided that the "the sole purpose of the LLC is to acquire, own, hold, maintain and operate certain real property located" at the property. The agreement stated that plaintiff was the initial manager and only member, with a 100% percentage interest in capital.

¶ 15                    Response to Motion to Dismiss

¶ 16 In response, plaintiff asserted that the mortgage terms violated public policy and the IMFL. He asserted that he "did not enter into the mortgage knowing that its terms were bypassing Illinois foreclosure laws." He claimed that DHM "took advantage of an unknowledgeable, unsuspecting person who was desperate to join the property rehab club."

¶ 17                                  Reply in Support of Motion to Dismiss

¶ 18 In reply, defendants asserted that the loan matured with a balloon payment due in June 2016 and neither the LLC nor plaintiff ever made any payments on the loan. Defendants asserted that under the Uniform Commercial Code, a debtor could pledge a membership interest in an LLC as collateral and a secured party may enforce its security interest in foreclosure or pursue remedies in Article 9 of the UCC, as DHM did here. Defendants asserted that the remedies in Article 9 of the UCC were appropriate because plaintiff's membership interest in the LLC, which he pledged as collateral, was personal property and did not implicate the IMFL. Defendants stated that the Third District Court for Salt Lake County, State of Utah held that the sale was proper and that DHM became the owner of the LLC and its assets, which included the property.

¶ 19                        Circuit Court's Order on Defendants' Motion to Dismiss

¶ 20 On June 23, 2021, the circuit court issued a one page written order granting with prejudice defendants' motion to dismiss the claims to quiet title for violating the IMFL, breach of contract, and fraud. The court dismissed without prejudice plaintiff's defamation *per se* claim.[2] The order does not provide the court's reasons for the ruling. We note that the order states that the court heard oral argument on the motion, but the record on appeal does not contain the report

---

[2] On appeal, plaintiff requests that this court reverse the circuit court's order that dismissed his claims to quiet title for violation of the IMFL (count I) and breach of contract (count II). Plaintiff states that he is not seeking relief in this court as to his claims for fraud (count III) and defamation *per se* (count IV).

of proceedings from the hearing. The court subsequently denied plaintiff's motion to reconsider. This appeal follows.

¶ 21                                    II. ANALYSIS

¶ 22       On appeal, plaintiff contends that the security agreement violated public policy in Illinois and the mortgage was invalid and violated the IMFL. He asserts that through the use of the LLC, DHM avoided the requirements of the IMFL, which was designed to protect individuals from quickly and unfairly losing their interests in real property. He asserts that DHM required him to form the LLC "to obtain the financing while obliterating his rights" under the IMFL. Plaintiff further contends that Utah was not a court of competent jurisdiction to determine issues concerning a mortgage recorded against real property in Illinois and he was not obligated to defend the lawsuit in Utah. He also asserts that the circuit court determined that *res judicata* applied to his lawsuit due to the judgment order that was entered in the Utah state court, but that the Utah order was irrelevant to *res judicata*. He states that DHM's lawsuit filed in the Utah state court was related to obtaining a money judgment against Harris, not to determine ownership rights. Plaintiff asserts that DHM only attached to its motion to dismiss the judgment from the Utah court, not the lawsuit from that case.

¶ 23       In response, defendants contend that dismissal under section 2-619 was proper due to the Utah forum selection clauses contained in the loan and security agreements and that plaintiff's claims are barred by *res judicata*. Defendants assert that the issue regarding the ownership of the LLC has already been adjudicated by a court in Utah, which determined that DHM owned the LLC.

¶ 24       As previously discussed, the circuit court granted DHM's motion to dismiss brought pursuant to section 2-619 of the Code. A motion to dismiss under section 2-619 "admits the legal

sufficiency of the complaint, admits all well-pleaded facts and all reasonable inferences therefrom, and asserts an affirmative matter outside the complaint that bars or defeats the action." *Villa Dubois, LLC v. Sabeel El*, 2020 IL App (1st) 190182, ¶ 34. "When ruling on a motion to dismiss under section 2-619, a court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party." *O'Connell v. County of Cook*, 2021 IL App (1st) 201031, ¶ 15. Further, when a circuit court dismisses a claim pursuant to section 2-619, "the questions presented are whether there is a genuine issue of material fact and whether the defendant is entitled to judgment as a matter of law." *Aurelius v. State Farm Fire & Casualty Co.*, 384 Ill. App. 3d 969, 973 (2008). A circuit court "should not grant a motion to dismiss unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *O'Connell*, 2021 IL App (1st) 201031, ¶ 15. We review *de novo* a circuit court's dismissal pursuant to section 2-619. *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 17.

¶ 25        Initially, we note that following submission of the parties' briefs, we ordered the Office of the Illinois Attorney General's Consumer Protection Division to file an *amicus curiae* brief in this matter. Under Illinois Supreme Court Rule 345, a brief *amicus curiae* may be filed at the request of the court. Ill. S. Ct. R. 345(a) (eff. September 20, 2010).

¶ 26        "An *amicus curiae* is an impartial individual who suggests the interpretation and status of the law, gives information concerning it, and whose function is to advise in order that justice may be done." *Mines v. Olin Corp.,* 171 Ill. App. 3d 246, 248 (1988). "An *amicus curiae* is not a party to the action, but a friend of the court" and "the sole function of an amicus is to advise or make suggestions to the court." *Id.* The United States Court of Appeals for the Seventh Circuit has explained three situations when a court may grant permission to file an *amicus* brief:

"when (1) a party is not adequately represented (usually, is not represented at all); or (2) when the would-be amicus has a direct interest in another case, and the case in which he seeks permission to file an amicus curiae brief may, by operation of stare decisis or res judicata, materially affect that interest; or (3) when the amicus has a unique perspective, or information, that can assist the court of appeals beyond what the parties are able to do." *National Organization for Women, Inc. v. Scheidler*, 223 F.3d 615, 616 (7th Cir. 2000).

¶ 27    Here, plaintiff, who resides in Illinois, argues that DHM required him to create the LLC in order to obtain the financing to purchase the property located in Illinois and that the LLC was created to circumvent the IMFL. He argues that DHM used Utah law to take control of the LLC and ownership of the property and that the state court in Utah was not a court of competent jurisdiction to determine issues concerning a mortgage recorded against real property located in Illinois. Given these circumstances, we find that the Office of the Illinois Attorney General's Consumer Protection Division has an interest in this case and can provide a unique perspective that can assist this court beyond what the parties are able to do.

¶ 28    In the Office of the Illinois Attorney General's *amicus curia* brief, it asserts that defendants failed to show that dismissal is warranted under section 2-619 based on both the Utah forum selection clauses contained in the loan and security agreements and *res judicata*.

¶ 29    As previously discussed, defendants argued in the circuit court that dismissal was proper based on the Utah forum selection clauses contained in the loan and security agreements and based on the argument that a state court in Utah already determined who owned the membership interest in the LLC. There are genuine issues of material fact with respect to defendants' defenses such that dismissal under section 2-619 is not proper.

¶ 30    Forum Selection Clauses contained in the Loan Agreement and Security Agreement

10

¶ 31       Plaintiff argues that Utah was not a court of competent jurisdiction to determine issues concerning a mortgage recorded against real property in Illinois. Defendants assert the circuit court properly dismissed plaintiff's claims based on the Utah forum selection clauses contained in the loan and security agreements.

¶ 32       We agree that under both Utah law and Illinois law, dismissal at the motion to dismiss stage based on the forum selection clauses contained in the loan and security agreements is improper.

¶ 33                                    Utah

¶ 34       As the *amicus* explains, the Utah supreme court has concluded that a plaintiff's claim that a contract was entered into fraudulently is "sufficient to render the forum selection clause unenforceable." *Energy Claims Ltd. v. Catalyst Investment Group. Ltd.*, 2014 UT 13, ¶¶ 51-53. The court explained that this concept "protects defrauded plaintiffs from being forced to litigate fraudulent contracts in a potentially inconvenient forum not of their choosing." *Id.* ¶ 51.

¶ 35       The *amicus* explains that "because plaintiffs assert that all of defendants' actions—from the terms set forth in the agreements to the public sale in Utah—were part of an unlawful and fraudulent equity-stripping scheme, dismissal based on the forum selection would be premature under Utah law." We agree. Here, plaintiff's complaint is based on allegations that DHM engaged in improper and illegal conduct relating to the entire loan transaction and related agreements that resulted in DHM eventually taking ownership of the LLC and the property. Plaintiff explains in his reply brief his theory: "Because the lending instruments used in this matter, from the creation of the LLC, the use of the LLC, the application of Utah law and the provisions for selling Appellant's interest in Utah, were illegal and improper, the entire agreement must be vitiated."

¶ 36    In plaintiff's complaint, he pled allegations to support his theory that the entire loan transaction was improper. He alleged that DHM required him to transfer the property to the LLC before the loan finalized and that under the property improvement escrow agreement, if he did not complete the rehabilitation within 60 days, the note was considered in default. DHM withheld a payment due to plaintiff under the agreement, and he had difficulty completing the construction project within the 60 days due to DHM's maintenance of the loan. DHM threatened to sell the property unless plaintiff paid $1,888 each month and DHM improperly evicted a tenant from the property, claiming that a foreclosure sale had been approved by an Illinois court. He alleged that DHM forced him to "take the [property] as a Utah corporation and then using corporate maneuvering, [DHM] apparently has taken over control of [the LLC] and has become the de facto executive officer and de facto owner." Plaintiff alleged that by its collection practices, DHM took over the purchase, rehabilitation and property without complying with Illinois foreclosure laws.

¶ 37    Accordingly, plaintiff sufficiently pled that throughout the entire loan transaction, which involved multiple agreements and resulted in DHM taking ownership of the property through the LLC, DHM engaged in practices that were unlawful and resulted in him losing his ownership in the property. Thus, as the *amicus* explains, under Utah law, dismissal of plaintiff's complaint at the motion to dismiss stage based on the Utah forum selection clauses contained in the loan and security agreements is improper. See *Bad Ass Coffee Co. of Hawaii v. Royal Aloha International, LLC,* 2015 UT App 303, ¶ 11 (the court of appeals in Utah reversed dismissal of the case because the court interpreted the forum-selection clause without considering whether the alleged fraud made enforcement unfair or unreasonable, whether a fraud claim was adequately pled, and without holding an evidentiary hearing to consider the fraud evidence).

¶ 38                                                  Illinois

¶ 39        In Illinois, "a forum-selection clause in a contract is *prima facie* valid and should be

enforced unless the opposing party shows that enforcement would be unreasonable under the

circumstances." *Dancor Construction, Inc. v. FXR Construction, Inc.*, 2016 IL App (2d) 150839,

¶ 75. Further, "[i]n order to invalidate the clause on the ground of fraud and overreaching, the

fraud alleged must be specific to the forum selection clause itself." *IFC Credit Corp. v. Rieker*

*Shoe Corp.,* 378 Ill. App. 3d 77, 93 (2007).  To determine whether a forum selection clause is

unreasonable, courts consider the following: "(1) the law governing the formation and

construction of the contract, (2) residency of the parties, (3) location of execution or performance

of the contract, (4) location of the parties and witnesses, (5) the inconvenience to the parties of

any particular location, and (6) whether the parties bargained for the clause." *Eckhardt v. Idea*

*Factory*, LLC, 2021 IL App (1st) 210813, ¶ 10. Before a court considers these factors and

whether a forum selection clause should be enforced, it will review whether the clause applies to

a plaintiff's claims. *Id.* ¶¶ 11, 33.

¶ 40        Here, as the *amicus* asserts, dismissal is not proper because there are questions of fact

as to whether the forum selection clauses contained in the loan and security agreements apply to

plaintiff's claims. In plaintiff's complaint, he alleged that the note and mortgage were illegal and

DHM violated the IMFL, and he attached these documents to the complaint. As the *amicus*

points out, the mortgage does not contain a forum selection clause and states that the provisions

"regarding the creation, perfection and enforcement of the mortgage, liens and security interest

herein shall be governed by and construed under the laws of the state in which the Mortgage

Property is located," which is Illinois. The note provides that Utah law governs but does not

contain a forum selection clause. The property improvement escrow agreement attached to the

complaint also does not contain a forum selection clause. However, as the *amicus* asserts, DHM's argument that dismissal is proper is based on the forum selection clauses contained in the loan and security agreements, not the note or mortgage.

¶ 41     In addition, the loan agreement includes a definition for "Loan Documents," which states that it "means the Promissory Note, Trust Deed, Loan Agreement, Security Agreement and Assignments of Rents and Profits ('Trust Deed'), Unconditional Personal Guaranty, Construction Escrow Agreement and all other agreements and documents contemplated by any of the aforesaid documents, and all amendments, modifications, addendums, and replacements, whether presently existing or created in the future." However, as pointed out by the *amicus*, the mortgage document that was attached to plaintiff's complaint is not listed in this definition. The loan agreement also states that "Real Property" means "the real property described in the Trust Deed of even date herewith." However, as the *amicus* asserts, defendants did not attach a "Trust Deed" to the motion to dismiss and it was not attached to the complaint. Accordingly, we find that there are questions of fact regarding whether the forum selection clauses contained in the loan and security agreements apply to the other agreements relating to the loan transaction, including the mortgage.

¶ 42     Further, as discussed by the *amicus*, even if the forum selection clauses in the loan and security agreements apply to plaintiff's claims, there are questions of fact with respect to the factors the court must consider to determine if it is unreasonable to enforce the clauses under the circumstances.

¶ 43     We note that the *amicus* asserts that the "verified complaint also includes a number of statements suggesting that this was not an arms-length transaction between sophisticated business entities, and therefore that the forum selections clauses were not the result of bargaining

between the parties" and that "this was a transaction entered into between an unrepresented, individual consumer and a Utah corporation that specializes in financing rehabilitation projects like the one undertaken by Harris." From our review of the complaint, we find that there are questions of fact regarding whether the transaction between plaintiff, who resides in Illinois, and DHM was an arms-length transaction between sophisticated businesspersons and whether they equally bargained for the Utah forum selection clause to govern the transaction involving property located in Illinois. See *Mellon First United Leasing v. Hansen,* 301 Ill. App. 3d 1041, 1046 (1998) (where the forum selection clause was not equally bargained for, the court noted "it does not appear that the clause was reached through arm's length negotiation between experienced businesspersons of the same stature. Rather, it was part of boilerplate language in small print on the back of a preprinted form used by plaintiff in its lease agreements").

¶ 44    Further, as previously discussed, there are numerous agreements involved in loan transaction between the parties and, as the *amicus* explains, the agreements contain different provisions regarding which state law governs, as the security agreement provides that it is governed under Utah law and the mortgage document provides that Illinois law applies to "the creation, perfection and enforcement of the mortgage, liens and security interests herein." Further, the mortgage and security agreements show that plaintiff executed the documents in Illinois, but it is not clear from the loan agreement or note where these were executed. Accordingly, there are questions of fact as to the factors the court must consider to determine if it would be unreasonable under these circumstances to enforce the forum selection clauses and, as the *amicus* asserts, further factual development is necessary for the court to reach a determination on the issue.

15

¶ 45        Accordingly, under both Utah law and Illinois law, the circuit court erred to the extent it granted defendants' section 2-619 motion to dismiss based on the forum selection clauses contained in the loan and security agreements. Because we reach the same result applying both state laws, we need not determine which state law applies.

¶ 46                                *Res judicata*

¶ 47        As previously discussed, plaintiff asserts the circuit court determined that *res judicata* applied to his complaint based on the Utah court order but that the Utah order is irrelevant to *res judicata*. He states that DHM's lawsuit filed in the Utah state court was related to obtaining a money judgment against Harris, not to determine ownership rights, and that DHM did not attach to its motion to dismiss the lawsuit from that case. On the other hand, DHM contends that plaintiff's complaint is barred by *res judicata* because the issue of the ownership of the LLC has already been adjudicated by a court in Utah, which determined that DHM owns the LLC.

¶ 48        Under the doctrine of *res judicata*, "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001). In both Illinois and Utah, the party who claims the doctrine applies must prove three elements, including: (1) a final judgment on the merits, (2) an identity of the parties or their privies, and (3) an identity of causes of action. *Tebbens v. Levin & Conde*, 2018 IL App (1st) 170777, ¶ 24; *Mack v. Utah State Department of Commerce, Division of Securities*, 221 P.3d 194, 203 (Utah 2009). The court should not apply *res judicata* where it would be fundamentally unfair to do so. *Nowak,* 197 Ill. 2d at 390. The party who invokes the doctrine has the burden of proving it applies. *Indian Harbor Insurance Co. v. MMT Demolition, Inc.*, 2014 IL App (1st) 131734, ¶ 28.

16

¶ 49      Here, DHM has not met its burden of proving that *res judicata* bars plaintiff's claims. To support its argument that *res judicata* applies, DHM attached to its motion to dismiss the two-page order from the district court judge in Utah. However, as the *amicus* explains, this order does not provide what the issues or causes of action were in that case to determine whether the causes of action are the same as they are in this case. The order also does not show that there was a final judgment on the merits with respect to plaintiff's claims raised in this case. Further, as the *amicus* asserts, the Utah order only mentions the security agreement, as it provides that under the security agreement, plaintiff pledged his ownership interest in the LLC as collateral for the loan and that DHM, as a secured creditor, was the successful purchaser at the public sale of the collateral conducted under Utah law in Utah. However, as previously discussed, in addition to the security agreement, plaintiff's claims are based on other agreements involved in the loan transaction, such as the note and mortgage.

¶ 50      In addition, as previously noted and as discussed by the *amicus*, the court need not apply *res judicata* if it would be fundamentally unfair to do so. Here, plaintiff's claims are based on the theory that DHM engaged in unlawful conduct with respect to the loan transaction and that he violated the IMFL. He alleged he lost his ownership of the property as a result. Thus, even if *res judicata* applies, there are questions of fact regarding whether it would be unreasonable or unfair to apply it to the circumstances here.

¶ 51                    Violations of Illinois Mortgage Foreclosure Law

¶ 52      Plaintiff alleged in his complaint that DHM violated the IMFL in a number of ways. DHM asserted in his reply to his section 2-619 motion to dismiss that it did not violate the IMFL and that the sale of plaintiff's ownership interest in the LLC was proper. However, as previously discussed, a motion to dismiss brought under section 2-619 admits the legal sufficiency of the

17

complaint but asserts affirmative matter outside the complaint that avoids or defeats the claim. *Villa Dubois, LLC,* 2020 IL App (1st) 190182, ¶ 34. Thus, to the extent the court dismissed plaintiff's claims based on DHM's assertion that it complied with the IMFL, the court erred because the dismissal was not based on an affirmative defense or other matter outside the complaint that defeats plaintiff's claims and therefore was outside the scope of a section 2-619 motion.

¶ 53                                      III. CONCLUSION

¶ 54       Based on the foregoing, the circuit court erred when it granted defendants' motion to dismiss. We reverse and remand for further proceedings.

¶ 55       Reversed and remanded.